Neal W. ROLAND, Plaintiff–Appellant,

v.

Perry JOHNSON; Thomas Phillips, Dale Foltz; and Bernie Toland, Defendants–Appellees.

Nos. 86–1737, 86–1852.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 27, 1987.

Decided Sept. 9, 1988.

Larry Bennett (argued) Butzel, Keidan, Simon, Myers & Graham, Marianne G. Talon, Detroit, Mich., for plaintiff-appellant.

Eric J. Eggan, Asst. Atty. Gen., Brian MacKenzie (argued), Lansing, Mich., for defendants-appellees.

Before JONES, WELLFORD and GUY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The plaintiff-appellant, Neal Roland, appeals from the district court's order granting summary judgment to the defendants-appellees. Roland also challenges the court's award of costs to the defendants. For the following reasons, we find that the court erred in its grant of summary judgment. Thus we reverse and remand this case for further proceedings consistent with this opinion. In addition, the court's award of costs to the defendants is vacated.

I.

The plaintiff-appellant, Neal Roland, is a prisoner at the State Prison of Southern Michigan ("SPSM"), located in Jackson, Michigan. He claims that on November 30, 1983 he was raped in his cell by prisoner Frankie Lee Weatherspoon while Daniel Perry, another SPSM prisoner, served as a lookout. The defendants-appellees are Perry Johnson, the Director of the Michigan Department of Corrections; Dale Foltz, the Warden of SPSM; Thomas Phillips, the Administrative Assistant to Warden Foltz; and Bernard Toland, the Director of Job Classifications for SPSM. Roland's action, filed pursuant to 42 U.S.C. § 1983 (1982), alleges that the above defendants violated his eighth and fourteenth amendment rights by failing to provide him with adequate safety and protection and by allowing conditions to exist at the prison which resulted in his rape.

Plaintiff sets forth, in his complaint, certain relevant factual allegations. Those allegations are reproduced below. Many of these allegations, however, are disputed by the defendants.

Roland, at the time of the alleged rape, was in SPSM for the offense of breaking and entering. His complaint states that since he is a male with "youthful features" and a slight build, he was a likely target for homosexual predators in SPSM. He allegedly has no history of assaultive or violent behavior and was classified by SPSM as requiring only "medium" custody. In April 1983, he had been recommended for a transfer to the Muskegon Correction Facility; but the transfer had not occurred at the time of the alleged rape because of a medical problem.

Roland's alleged assailant, Frankie Lee Weatherspoon, is serving life without parole for murder, and the alleged lookout, Daniel Perry, is in prison for first degree criminal sexual conduct and armed robbery. Roland alleges that both Weatherspoon and Perry were known sexual predators and highly assaultive individuals. He further points out that both men were classified by the prison as requiring "close" (one level above "medium") custody.

At the time of the alleged rape, all three of these individuals—Roland, Weatherspoon, and Perry—were housed in 11 Block, an "honor block" in which residents are given more privileges, including more out of cell time, than in other cell blocks. To qualify for admission to 11 Block prior to August 1983, an inmate was required to refrain from major misconduct for twelve months and minor misconduct for six months. In August 1983, however, 11 Block was changed from a close custody prison block to a lower, medium custody level. While normally medium and close security inmates are not housed together, when 11 Block was changed in August

1983, certain close security inmates (including Weatherspoon and Perry) were allowed to remain, along with the medium custody prisoners.

Within 11 Block, Perry and Weatherspoon were classified as "block help" or "porters." This position gave them added mobility throughout the cell block, including the ability to get out of their cells before other inmates. Perry and Weatherspoon were further sub-classified as "breakmen" and were therefore able to walk up to each tier of 11 Block and operate the mechanical devices of that tier which open the cells of the other inmates. According to Roland, the breakman position was one of "high honor" and should not have been awarded to inmates like Weatherspoon and Perry who, as known sexual predators, were likely to abuse the privilege. Indeed, Roland claims that it is because Weatherspoon and Perry were accorded these positions that they were able to gain access to his cell on the fourth tier of the block. Further, Roland claims that it was this access which allowed Weatherspoon to rape him while Perry served as the lookout.

To establish the liability of the defendants under section 1983, Roland attempts to show that they were "deliberately indifferent" to his safety, and that this indifference resulted in his rape. As to *defendant-appellee Toland*, Roland alleges that Toland manifested a deliberate indifference by refusing to reclassify and remove Weatherspoon and Perry from their job assignments as breakmen after being requested to do so by Richard Thrams, the Assistant Resident Unit Manager of 11 Block. Toland, as the Classification Director for SPSM, had the power and responsibility to assign and remove prisoners from their jobs. In making a decision relating to a job assignment, Toland was also to work in coordination with unit managers such as Thrams.

Roland contends that the facts demonstrate that Thrams requested Toland to reclassify Weatherspoon and Perry because of *investigative reports* linking them to an ongoing homosexual pressure gang in 11 Block, and because of *hearsay evidence* that Weatherspoon and Perry were pressing other inmates in the block for sex. Roland contends that the evidence of Weatherspoon and Perry being homosexual predators is consistent with the evidence in their records, both in and out of prison.

In his deposition, Toland acknowledges that sexual predators should not be block protecters. However, he argues that there was nothing in Weatherspoon's file to indicate that he had predatory tendencies and that Perry's file is irrelevant because Perry is not accused of assaulting Roland. Further, Toland argues that the record does not support Roland's contention that Toland knew, at the time of the rape, that Weatherspoon and Perry were actively pressing other inmates for sex. Finally, Toland suggests that he did not reclassify Weatherspoon and Perry because there was no written documentation or disciplinary finding regarding their alleged behavior in 11 Block. Also, he points out that Thrams himself acknowledged that the information he gave to Toland was not sufficiently trustworthy to be reduced to writing.

The basis of Roland's allegations against *defendant-appellaee Phillips*, the Administrative Assistant to the Warden, is that his (Roland's) mother, Mrs. Jean Berry, met with Phillips in the summer or fall of 1983 and notified him that her son was in danger of being assaulted by homosexual predators. Phillips denies meeting with Mrs. Berry or discussing any such matter, although he does acknowledge an August 24, 1983 phone conversation with Mrs. Berry regarding Roland's transfer to the Muskegon Correction Facility. Mrs. Berry, however, testified in her deposition that she showed Phillips a photograph of her son and told Phillips that some inmates were pressuring her son for sex. She testified that Phillips replied that if her son was not a homosexual, he had nothing to worry about.

Roland also asserts that Phillips was aware of a November 1983 investigation which included allegations by certain inmates against Perry and Weatherspoon re-

lating to sexual pressuring. Therefore, Roland concludes that Phillips had actual knowledge of the risk to him of an assault, yet took no action to protect him. This failure to act, according to Roland, manifested a deliberate indifference to his security needs.

Finally, Roland asserts a deliberate indifference on the part of *defendants-appellees Johnson* (the Director of the Michigan Department of Corrections) and *Foltz* (the Warden of SPSM) to the existence of a pervasive and unreasonable risk of harm to individuals, like Roland, who fit the known profile of prison rape victims. These two defendants are responsible for the rules and policies affecting the operation of SPSM. According to Roland, they are liable for their failure to implement adequate policies which would have protected Roland and others like him in an atmosphere of unreasonable and pervasive sexual pressures. Roland also claims that their approval of, or acquiescence, in the policies on job classification and admission to 11 Block solidifies their liability. Further, Roland alleges that Johnson and Foltz failed to set up policies which would allow inmates like Weatherspoon and Perry to be screened out of the honor block based on general behavioral problems or reliable information from inmate sources, short of the need for an actual misconduct hearing and finding. Foltz and Johnson are also alleged to be responsible for a pervasive policy at SPSM which *discourages* reporting and prosecution of sexual assaults, since those who report that they have been assaulted are placed in protective custody which limits inmates in a manner similar to punitive detention. Finally, Roland claims that Foltz and Johnson were on notice that sexual assaults were a serious problem at SPSM but failed to issue a policy that would protect individuals likely to be victimized. To establish notice, Roland points to several reports that were available to Foltz and Johnson and which document the problems of physical and sexual assaults at SPSM as well as the existence of policies discouraging the reporting of such assaults.

Defendants Foltz and Johnson counter Roland's allegations by arguing that since Roland never told anyone that he had been threatened by Weatherspoon, they could not be aware that he might be in jeopardy. Furthermore, they assert that the policy of protective custody does not discourage the reporting of assaults, and that they have actively sought ways to eliminate violent activity at SPSM.

Roland filed this lawsuit on November 16, 1984, in the United States District Court for the Eastern District of Michigan. After discovery began, the district court, on June 17, 1985, assigned the case to Magistrate Steven Pepe for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (1982). Subsequent to that assignment, the court, on June 26, 1985, pursuant to 28 U.S.C. § 636(b)(2), entered an order instructing the magistrate to serve as a special master for the case and, upon the parties' consent, conduct the trial. The parties consented to a trial before the magistrate with the express understanding that it would be a jury trial. Thereafter, discovery continued and was apparently completed when, on December 19, 1985, the defendants moved for summary judgment.

The magistrate conducted hearings on the defendants' motion and, on June 12, 1986, in an 88–page opinion, recommended that the motion be denied and the case proceed to trial. In the magistrate's view, there was sufficient evidence from which a jury could find that the defendants were deliberately indifferent to the safety needs of the plaintiff. Therefore, Magistrate Pepe felt summary judgment was an inappropriate resolution of this case.

The defendants filed timely objections to the magistrate's recommendation with the district court. On July 10, 1986, the district court, Judge LaPlata presiding, granted the defendants' motion for summary judgment. In the court's 2½ page order of dismissal, the magistrate's report was neither mentioned nor discussed. In the court's view, the plaintiff had, at most, only established that the defendants were *negligent* in permitting Weatherspoon and Perry to serve as block porters. Further,

the court found that the record was devoid of any proof that prison authorities were aware of specific threats directed at Roland by his alleged assailants. Finally, in an order dated August 18, 1986, the district court awarded defendants their costs for deposition transcripts. This appeal, which was timely filed, challenges both of the district court's orders.

## II.

▉ The first issue we address is plaintiff's argument that the district court committed reversible error in not affording any weight to the report and recommendation of the magistrate. In Roland's view, the magistrate's recommendation that summary judgment was inappropriate should have been reviewed by the district court under the "clearly erroneous" standard, and therefore, the district court erred in reviewing the report *de novo*. For the following reasons, we find this argument to be without merit.

The district court's June 26, 1985 order, assigning this case to Magistrate Pepe, is set forth below:

> Pursuant to Tile [sic] 28 U.S.C. Section 636, IT IS HEREBY ORDERED that the above entitled cause is assigned to the docket of Magistrate Steven D. Pepe, United States Magistrate *for all pretrial and appropriate hearings under 636(b)(1)(A) and (B). Magistrate Pepe is further appointed as special master under 636(b)(2)* and Fed.R.Civ.P. 53 and upon consent of the parties, may try the matter at the earliest available date and thereafter file a report and recommendation with the district judge.

J. App. at 133 (emphasis added).

This order was issued subsequent to the court's June 17, 1985 order assigning the case to Magistrate Pepe, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation. Thus, it appears that Magistrate Pepe received this case from the district court via two different referrals. The question is what standard of review should be applied by a district court when there has been a referral under both section 636(b)(1)(B) and 636(b)(2).

28 U.S.C. § 636 sets forth both the jurisdiction and powers of United States magistrates. A referral to a magistrate pursuant to 28 U.S.C. § 636(b)(1)(A) and (B)[1] authorizes the magistrate to rule on both non-dispositive and dispositive pretrial motions. A referral pursuant to 28 U.S.C. § 636(b)(2)[2] authorizes the magistrate, as a special master, to conduct a trial upon the consent of the parties. The standard of review applicable to a magistrate's recommendation is dependent upon which of these sections grants his authority in a

---

1. Section 636(b)(1)(A), (B), and (C) provide as follows:

   (A) *[A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for ... summary judgment....* A judge of this court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is *clearly erroneous* or contrary to law.

   (B) *[A] judge may also designate a magistrate to* conduct hearings, including evidentiary hearings, and to *submit to a judge of the court proposed findings of fact and recommendations for the disposition,* by a judge of the court, *of any motion excepted in subparagraph (A),* [*i.e.,* summary judgment motions,]....

   (C) [T]he magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

   Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.* The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

   (Emphasis added).

2. Section 636(b)(2) provides as follows:

   A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

particular instance. Here, the magistrate has ruled on a summary judgment motion which, according to section 636(b)(1)(B), is a dispositive pretrial motion and one which is subject to *de novo* review. *See Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 954 (6th Cir.1985), *cert. denied*, 479 U.S. 830, 107 S.Ct. 116, 93 L.Ed.2d 63 (1986); *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1102 (6th Cir.1984). A summary judgment determination should be distinguished from section 636(b)(1)(A) determinations, which are subject to a clearly erroneous standard of review. To make the issue even more complicated, a special master's findings, pursuant to section 636(b)(2), are reviewed under both the clearly erroneous standard (factual findings) and the *de novo* standard (mixed or pure findings of law). *See Oil, Chemical and Atomic Workers International Union, AFL–CIO v. NLRB*, 547 F.2d 575, 580 (D.C.Cir.1976), *cert. denied sub nom., Angle v. NLRB*, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). Thus, the standard of review applicable to a special master's findings depends on (1) which section grants the magistrate's authority in a particular instance and (2) whether the finding is one of fact or of law.

After sorting through the statutory provisions, we find that the district court was correct in reviewing *de novo* the magistrate's decision as to summary judgment. The summary judgment motion was a section 636(b)(1)(B) *dispositive* motion which is subject to *de novo* review. To hold that the designation of a magistrate as a special master changes the court's standard of review as to a magistrate's recommendation on a dispositive motion would allow a district court to avoid the classification of subsections (b)(1)(A) and (B) simply by designating a magistrate as a special master. Therefore, we refuse to engage in such reasoning. Although it would have been preferable for the district court to have listed its reasons for rejecting the magistrate's opinion, such action was not required because the review was *de novo*. Thus, Roland's contention as to this point is without merit.

### III.

Having resolved the procedural issue in a manner favorable to the defendants-appellees, we must now determine whether the court's summary judgment order is also to be upheld. This court may only sustain a grant of summary judgment if the materials before the district court show that there is *no* genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Furthermore, all evidence must be viewed in a light most favorable to the non-moving party. *See Sec. & Exch. Comm'n v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985) (per curiam). Applying this standard to the facts of this case, we find the district court *improperly* granted summary judgment to the defendants.

The parties do not dispute that the legal standard applicable to determining whether a violation of the eighth amendment occurred in the context of an assault upon an inmate is whether the defendants' conduct amounted to a "deliberate indifference" to a risk of injury to the plaintiff. *See Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The Supreme Court in *Whitley* concluded that in order to support an action under section 1983, plaintiffs must establish something more than a lack of ordinary due care, inadvertence or error. Instead, the conduct must be "obdurate" or "wanton," *i.e.*, a recklessness or callous neglect. *Whitley*, 106 S.Ct. at 1084. This standard is designed to strike an appropriate balance between the deference that should be accorded to prison officials in their administration of the prison and the constitutional right of prisoners to be free from cruel and unusual punishment. *Id.*

In this case, Roland has assembled a substantial record establishing a legitimate factual question as to whether the defendants were deliberately indifferent to his safety. This is especially true since all factual inferences are to be resolved in his favor on a motion for summary judgment. Consequently, when viewing the evidence in a light most favorable to the plaintiff, as

we must do, we conclude that it is possible that a jury *could have found* liability as to each of the defendants on the following bases.

First, as to defendant Toland, a jury could find that he had been informed of the threat Weatherspoon and Perry posed to other inmates, but failed to take action to reclassify these inmates from their positions as breakmen when asked to do so by Assistant Resident Unit Manager Thrams. A jury could also find that if Toland had conducted further investigations after his discussions with Thrams, he would have found widespread evidence that Weatherspoon and Perry were pressing other inmates for sex.

Second, as to defendant Phillips, a jury also could find that he had been warned by plaintiff's mother, Mrs. Berry, that her son had been pressured by other inmates for sex. The jury could also find that Mrs. Berry showed Phillips a picture of her son which would suggest that he fit the known profile of prison rape victims. Finally, a jury could find that Phillips' response to Mrs. Berry, *i.e.*, that her son need not worry if he was not a homosexual, was effectively a failure to act and therefore manifested a deliberate indifference to the plaintiff's security needs.

Finally, as to defendants Johnson and Foltz, a jury could find that they were responsible for a pervasive policy at SPSM which discourages the reporting and prosecution of assaults. The jury also could find that despite their knowledge of a high level of violence and sexual assaults at the prison, they failed to adopt policies that would eliminate or control these problems, thereby ensuring the safety of prisoners like Roland. Finally, the jury could find that Johnson and Foltz allowed policies to exist which permitted inmates like Weatherspoon and Perry to hold positions of "honor" in a medium security block.

In light of the above observations, there clearly exist questions of material fact concerning the behavior of each of the defendants with respect to the injuries allegedly suffered by the plaintiff, and whether that behavior under the circumstances of this case amounts to a deliberate indifference to the plaintiff's safety. Accordingly, a summary judgment order was not appropriate in this case.

### IV.

Finally, because the district court's decision is reversed and this case is remanded for trial, the court's decision to award costs to the defendants is vacated.

Therefore, for all of the foregoing reasons, the district court's summary judgment order is REVERSED and this case is REMANDED for further proceedings consistent with this opinion and the court's award of costs to the defendants is VACATED.

WELLFORD, Circuit Judge, dissenting:

I dissent and would remand this case for the reasons indicated. Plaintiff Neal W. Roland, an inmate in the State Prison of Southern Michigan (SPSM), brought a civil rights action against several officials of the Michigan Department of Corrections, including Perry Johnson, the director of the Michigan Department of Corrections; Dale Foltz, the Warden of SPSM; Thomas Phillips, the Administrative Assistant to Warden Foltz; and Bernard Toland, the Director of Job Classification at SPSM.[1] Roland's complaint stated that he is "a young, fair skinned white male standing 5'11", 150 pounds, slightly built with youthful features." He asserts that these characteristics made him a prime rape target at SPSM, and further alleges having no history of assaultive or violent behavior. Plaintiff was reclassified to medium custody and was recommended for a transfer to Muskegon Correctional Facility on April 5, 1983, but continued to be held at SPSM due to a

---

**1.** In plaintiff's first amended complaint, Count V, there is also reference to plaintiff's rights by reason of defendants' "gross negligence and/or reckless disregard for the personal safety of the plaintiff" under Michigan law, and the regulations and rules of its Department of Corrections.

medical problem, a hemotoma on his head.[2] Plaintiff signed a medical waiver form for the prison authorities to expedite his transfer from SPSM to another facility.

While at SPSM, plaintiff was housed in an "honor block," 11 block, in which residents are given more privileges, including more out-of-cell time, than in other cell blocks. To qualify for admission to 11 block, an inmate is required to refrain from major misconduct for twelve months, and from minor misconduct for six months. In August 1983, 11 block was changed from a close custody prison block to a lower, medium custody level. This meant that over 450 inmates, spread out over five tiers, were supervised by only three corrections officers. Plaintiff's third-tier cell could not be seen from the guards' room.

On November 30, 1983, Roland was allegedly raped by another 11 block inmate, Frankie Lee Weatherspoon, who was serving life without parole for murder. Another inmate, Daniel Perry, allegedly acted as a lookout for Weatherspoon. A nearby inmate saw part of the attack and confirms Roland's claim of rape by other inmates. Additional evidence of the incident is the fact that Roland sought medical attention as a result of claimed injuries from this sexual assault. The record shows Perry and Weatherspoon were classified as requiring close security, a higher security classification than medium security. Normally medium and close security inmates are not housed together, but when 11 block was changed from close to medium classification, certain close security inmates were allowed to remain. Roland charges that allowing persons with close security classification such as Weatherspoon and Perry to be housed with those classified as requiring medium security amounted to a disregard for his safety, and for others in his same status.

Not only were Weatherspoon and Perry allowed to remain in 11 block after its reclassification, they were allowed significantly more freedom than normal inmates. As "porters" or "block help" they were allowed out of their cells more often and earlier than other inmates. More significantly, their status in the block meant Weatherspoon and Perry operated the mechanical devices on each tier that simultaneously unlocked the cells on that particular tier of block 11. Thus Perry and Weatherspoon had complete access to Roland's cell, and Roland claims this access and the known predatory character of his assailants were the bases for the foreseeability of the rape.

Roland has produced some evidence indicating prison authorities knew of these prisoners' propensity for violence. Information developed by discovery demonstrated that in January of 1983 investigative reports prepared by the Department of Corrections revealed that a gang of inmates in 11 block were pressuring other inmates for sex. Apparently officials had identified some inmates who had been pressured and raped, but they were reluctant to testify against the gang members. In the report, Perry was consistently reported to be a member of this gang. Weatherspoon was not mentioned, but he was not in 11 block at the time the reports were prepared. Roland claims that in late 1983, prior to his rape, additional reports concerning the sexual pressure group were brought to the prison authorities' attention.

Information available to prison officials regarding Weatherspoon includes his supplemental presentence investigation report for a 1979 offense. This report notes a "history of assaultive behavior" and adds, "this man's violent temper could easily escalate to other members of the community." A supplemental report from 1981 reflects not only Weatherspoon's history of assaultive behavior, but also that he is "highly aggressive [and] violent." In addition, Weatherspoon's psychological report sets out that he is "a predatory individual who previously pressed other inmates for sex and money, and who made so many enemies in the institution that he spent some months in administrative segregation." It further notes that he "is very aggressive and assaultive, and ... highly predatory." This evaluation is buttressed

---

**2.** SPSM houses the primary medical facilities for the Michigan Department of Corrections.

by other documents which indicate that Weatherspoon is a "homosexual predator."

In addition to Perry's reputation in 11 block for being a gang member exerting sexual pressure on others, his prison file shows that since a very early age "he has documented serious and assaultive incidents of a predatory nature." Perry was incarcerated at SPSM for first degree criminal sexual conduct and armed robbery. Perry was classified in 1983 as a very high assaultive risk.

Defendant Toland, the Job Classification Director at SPSM, screened Perry and Weatherspoon for job placement and assigned them to their positions of privilege in 11 block. Suit against Toland is based on his refusal to reclassify and remove Weatherspoon from his job assignment after he was requested to do so by 11 block's Assistant Resident Unit Manager Richard Thrams due to "knowledge that Weatherspoon was a homosexual predator." Defendants Johnson and Foltz are joined as prison officials responsible for Roland's safety. According to the complaint, Thrams requested the reclassification of both Weatherspoon and Perry because of their reputation as social and sexual deviants. Defendant Toland defended on grounds that he needed some written documentation or a disciplinary finding to warrant transfer, and that he received none.

Plaintiff's mother claims that she visited defendant Phillips, administrative assistant to the warden, before her son's rape to inquire about transfer of plaintiff to another factility. She stated that she notified Phillips that the plaintiff was in danger of being assaulted by homosexual predators. Phillips denies meeting with Mrs. Berry or having any such discussion but concedes that he had a phone conversation on August 24, 1983, regarding Roland's medical hold and his transfer. Roland's mother claims she showed Phillips a photograph of her son and told him that some blacks were pressuring her son for sex. She swore in her deposition that Phillips responded to this by stating that if plaintiff was not a homosexual, he had nothing to worry about. Plaintiff also asserts that Phillips

was aware of an investigation of Perry and Weatherspoon relating to sexual pressuring prior to the episode at issue.

The district court first referred this controversy to Magistrate Steven D. Pepe for report and recommendation under 28 U.S.C. § 636(b)(1)(B). Later, the district judge issued a second order of reference (June 26, 1985):

Pursuant to Tile [sic] 28 U.S.C. Section 636, IT IS HEREBY ORDERED that the above entitled cause is assigned to the docket of Magistrate Steven D. Pepe, United States Magistrate for all pretrial and appropriate hearings under 636(b)(1)(A) and (B). Magistrate Pepe is further appointed as special master under 636(b)(2) and Fed.R.Civ.P. 53 and, upon consent of the parties, may try the matter at the earliest available date and thereafter file a report and recommendation with the district judge. In lieu of the meeting provision of Rule 53(d)(1), the Clerk of the Court shall set such pretrial and trial dates and issue such other notices as are appropriate.

The parties consented to trial by jury before the magistrate, and the consent was docketed July 8, 1985. These two referrals have resulted in confusion over the legal effect of the magistrate's subsequent action.

Once before the magistrate, all defendants moved for summary judgment. The magistrate filed an eighty-eight page report and recommendation that defendants' motion for summary judgment be denied. The district court, however, dismissed the case without mentioning the magistrate's report. Thereafter, the district court awarded costs of $1,275.42 to the defendants "for deposition transcripts." Plaintiff's appeal is from these actions. Plaintiff now argues that the reference to the magistrate as a special master under Civil Rule 53 and 28 U.S.C. § 636(b)(2) required the district court to accept the magistrate's report unless it was "clearly erroneous." He asserts that the district court's failure to mention the report in its order granting summary judgment to defendants, and its failure to demonstrate that the magis-

trate's report was clearly erroneous, constitutes reversible error.

Defendants take the position that because the magistrate advised the parties to file objections from his report within ten days pursuant to § 636(b)(1), the report was issued under § 636(b)(1) rather than (b)(2), and was, therefore, subject to the "de novo" standard of review by the district court.[3] Defendants also argue that this court cannot assume that the district court would fail to review the relevant evidence before issuing its decision, despite the fact it did not mention the magistrate's exhaustive report and review of the record before him.

It is difficult to determine the magistrate's status in this case. On one hand, the court's first referral, filed June 17, 1985, states that the matter is to go before "Steven O. Pepe, United States Magistrate, for report and recommendation under 636(b)(1)(B)." Further, at the conclusion of the magistrate's report, he states "[a]ny objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1)." This is strong evidence that both the court and the magistrate saw the case as a referral pursuant to § 636(b)(1), and the district court's proper standard of review is de novo.

On the other hand, the court's second referral, issued June 26, 1985, refers the case to Magistrate Pepe as *both* a magistrate under § 636(b)(1) and as a special master contemplated by § 636(b)(2). This second referral clearly contemplated that the magistrate could try the case as a special master if the parties consented, which they did. This gives at least some indication that the matter was before the magistrate pursuant to § 636(b)(2) and the proper standard of review is the clearly erroneous standard.

The legal implication of the type of reference is significant in this case. As above stated, the district court made no mention of the magistrate's report in rejecting it. If this report were issued in the magistrate's capacity as a "special master" under § 636(b)(2), his conclusion may be overturned by the district court only if clearly erroneous. If, however, the report was made in Magistrate Pepe's normal capacity as pretrial magistrate, a trial court's review of the findings must be de novo, if a party makes timely objections to the report.

The findings of fact of a special master must be accepted by the district court unless they are clearly erroneous. Rule 53(e)(2), Fed.R.Civ.P. On the other hand, where a magistrate appointed pursuant

---

3. The pertinent sections of 28 U.S.C. § 636 are:
(b)(1) Notwithstanding any provision of law to the contrary—
    (A) a judge may designate a magistrate to hear and determine any pretrial matter ... except a motion ... for summary judgment.... A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.
    (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, *of any motion excepted in subparagraph (A),* of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.
    (C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

*Within ten days after being served with a copy, any party may serve and file written objections* to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.
    (2) A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a *special master in any civil case, upon consent of the parties,* without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts. (emphasis added).

to § 636(b)(1)(B) files proposed findings and recommendations and a party files timely objections thereto, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Section 626(b)(1)(C).

*Hill v. Duriron Co.*, 656 F.2d 1208, 1213 (6th Cir.1981); *see also Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th Cir.1984).

As we made clear in *Hill*, Fed.R.Civ.P. 53(e)(2), which governs district court references to masters, the district court is to accept the master's findings of fact "unless clearly erroneous." We also stated in *Hill* that "there is no provision in § 636(b)(1) for referring a case to a magistrate for trial on the merits." 656 F.2d at 1212. In the instant case, the parties and the district court apparently contemplated and agreed that, if necessary, trial on the merits would be before the magistrate. It is clear that, absent unusual circumstances, the parties must consent to a trial before a magistrate under § 636(b)(2). *Thornton v. Jennings*, 819 F.2d 153 (6th Cir.1987); *Hill*, 656 F.2d at 1212. There was no specific reference to the magistrate to hear the motion for summary judgment as such.

We conclude that the district court must first determine in what capacity Magistrate Pepe was acting. The parties made no objection to either of the references made by the district court to the magistrate, whether under § 636(b)(1) or (b)(2). Having made no objection before the magistrate submitted his report, we believe the parties may not now object to whatever determination ultimately may be made as to whether or not the magistrate was acting as a special master. *Hill*, 656 F.2d at 1213; *Day*, 749 F.2d at 1201–02.

The district court, in its order of dismissal dated July 10, 1986, surprisingly made no reference whatsoever to the lengthy June 12, 1986 report and recommendation against granting defendants' motion for summary judgment. Defendants' objections to that report and recommendation were not filed until June 27, 1986, more than ten days after the filing of the report.[4] Section 636(b)(1)(B) specifies that "[w]ithin *ten days* after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." (emphasis added) Proof of mailing of the report and recommendation was filed June 12, 1986. The magistrate's report and recommendation concluded with the warning:

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time constitutes a waiver of any further right of appeal.

If no objection is filed within the specified period with this warning to the parties, there is a waiver of the right to appeal under § 636(b)(1). *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).[5]

There was no consideration given by the district court of the role of the magistrate in this unusual situation, particularly whether he was acting as a special master or not, and no consideration given about the timeliness of objections to the lengthy report and recommendation submitted to the court. If the magistrate were acting as a special master under the second order of reference, the report and recommendation and the findings therein would be accepted unless clearly erroneous. In that

---

**4.** Revised objections were filed by defendants on June 28, 1986. The Joint Appendix contains no copy of any objections except those filed June 28, 1986.

**5.** Section 636(b)(2) contains no similar ten day rule requirement. But see Fed.R.Civ.P. 72(b) dealing with magistrates and pretrial matters, specifically dispositive motions. Rule 72(b) refers to situations where a magistrate is "as-

signed without consent of the parties to hear a pretrial matter dispositive of a claim or defense." That rule also contains language similar to that of § 636(b)(1) requiring *written* objections within ten days. Whether this same time limitation for objections applies to a special master's report and recommendation is a question not free of doubt. *See Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237 (7th Cir.1985).

event, the district court would necessarily have to set out clearly the basis for his setting aside the report and recommendation if he found the report, and the findings therein, to be clearly erroneous. Even if the report and recommendation were deemed to be that of a magistrate under § 636(b)(1), the district court would be obligated in our view to make some reference to the magistrate's findings and determinations to set out a basis for its agreement or disagreement with the magistrate in the de novo determination of matters objected to by one of the parties. *See* 28 U.S.C. § 636(b)(1)(B) and (C); *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980); *Hill v. Duriron Co.*, 656 F.2d 1208, 1213; *Campbell v. United States District Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974).

The district court has not considered whether defendants' objections to the magistrate's report and recommendation were timely filed and, if not, the effect of such a determination. Also, the district court has made no reference to the status of Roland's asserted state court claims found in count five of his complaint.

In light of the difficulties and uncertainties herein discussed, I am persuaded that this matter should be REMANDED to the district court for consideration and treatment of the questions involved. (We should set aside, in any event, the district court's award of costs for deposition transcripts; plaintiff's asserted claims are not so essentially baseless and frivolous as to warrant such imposition.)