**Wilford Allen KNIGHT,
Plaintiff–Appellee,**

v.

**Gary GILL; Stephen T. Smith; and John Wigginton, Defendants–Appellants.**

No. 92–6068.

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1993.

Decided July 29, 1993.

Richard Heideman, Robert M. Stevenson (argued and briefed), Heideman & Cardin, Roya A. Ghazi, Marc H. Levy, Louisville, KY, for plaintiff-appellee.

Suzanne D. Cordery (argued and briefed), Office of the Gen. Counsel, Corrections Cabinet, Frankfort, KY, for defendants-appellants.

---

Before: KENNEDY and SILER, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendants Gary Gill, Stephen T. Smith, and John Wigginton appeal the district court's order denying their motion for summary judgment in this 42 U.S.C. § 1983 action initiated by inmate Wilford Knight. We vacate the district court's order and grant summary judgment to the defendants for the following reasons.

## I.

On December 9, 1989, plaintiff-appellee Wilford Allen Knight ("Knight"), an inmate at the Luther Luckett Correctional Complex (the "Correctional Complex") in Oldham County, Kentucky, was assaulted by his cellmate, John Loran ("Loran"). Specifically, Loran doused Knight's face and upper body with boiling water, and struck Knight with his fists, resulting in injuries requiring medical attention.

On July 5, 1990, Knight initiated this 42 U.S.C. § 1983 action in district court against Gary Gill (the Correctional Complex's Assistant Unit Administrator), Stephen T. Smith (the Correctional Complex's Warden), and John Wigginton (Secretary of the Kentucky Corrections Cabinet), in their individual and official capacities.

Following two Amended Complaints and numerous motions and district court rulings, Knight filed his Third Amended Complaint (the "Complaint") on November 14, 1991. The Complaint asserts five causes of action: "Eighth Amendment Violation" (Count One); "Gross Negligence" (Count Two); "Failure to Protect" (Count Three); "Failure to Follow Policy" (Count Four); and, "Infliction of Emotional Distress" (Count Five).

On July 6, 1992, the defendants moved for summary judgment arguing, *inter alia*, that "[p]rison officials are immune from suit on the basis of qualified good faith immunity unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person should have known." Memorandum in Support of Defendants' Motion for Summary Judgment at 19.

On July 27, 1992, Knight filed a brief opposing the defendants' motion and appended an affidavit in support thereof which claimed that Loran was under psychiatric care after having been previously disciplined by prison officials for violent behavior. Knight further claimed, in both his deposition and affidavit, that Gill refused his repeated requests to transfer to another cell, though Knight does admit that he refused Gill's offer to temporarily transfer to protective custody (which Knight refers to as the "hole").

On July 31, 1992, the district court judge denied the defendants' motion for summary judgment:

> Plaintiff shows evidence that prison officials had knowledge of Loran's violent nature. He further presents evidence that Defendant Gill was notified of the immediate danger and refused to take action to transfer the plaintiff to another cell. Plaintiff testifies that Gill acted with personal animosity toward him. These factual issues are sufficient to overcome the defendants' motion for summary judgment.
>
> . . . .
>
> Questions of fact also exist regarding the knowledge held by defendants Smith and Wiggington [sic] which preclude summary judgment. Plaintiff will be allowed to develop and present facts on this issue to the jury. The defendants' motion for summary judgment will therefore be denied.

District Court's July 31, 1992 Memorandum at 2.

The defendants timely filed their notice of appeal on August 14, 1992.

## II.

### Jurisdiction

■ The defendants challenge the district court's order denying their motion for summary judgment based on qualified immunity. An appeal from such a decision is an immediately appealable collateral order. *Haynes v. Marshall*, 887 F.2d 700, 702 (6th Cir.1989).

### Standard of Review

"Review of the district court's qualified immunity decision is *de novo.*" *Washington*

*v. Newsom,* 977 F.2d 991, 993 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1848, 123 L.Ed.2d 472 (1993). "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.1992) (citation omitted). Summary judgment is appropriate when the evidence, taken in the light most favorable to the non-moving party, demonstrates that there are no genuine issues of material fact left for resolution at trial, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### Deliberate Indifference

■ On appeal, Knight argues that his "Eighth Amendment claim against Defendant Gill relies on the question of whether Defendant Gill acted with deliberate indifference to the safety of Plaintiff. By refusing Plaintiff's transfer to another cell and offering *only* isolation in the 'hole,' Defendant Gill acted with deliberate indifference to Plaintiff's safety." Appellee's Brief at 10 (emphasis in original). Knight further maintains that his "claims against Defendants Smith and Wigginton rest in large part on their failure to properly train and supervise the activity of prison personnel. By shirking their responsibility to contain Loran's violence and address the danger to Plaintiff, Defendants Smith and Wigginton violated Plaintiff's Eighth Amendment rights." *Id.* at 11–12.

We must determine "whether the defendants' conduct amounted to a 'deliberate indifference' to a risk of injury to the plaintiff." *Roland v. Johnson,* 856 F.2d 764, 769 (6th Cir.1988) (citations omitted). The deliberate indifference standard, first articulated in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), "has since been extended 'to impose upon both federal and state correctional officers and officials the obligation to take reasonable steps to protect inmates from violence at the hands of other inmates.'" *Marsh v. Arn,* 937 F.2d 1056, 1060

(6th Cir.1991) (quoting *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988)).

"In defining 'deliberate indifference,' the Supreme Court has explained that while an 'express intent to inflict unnecessary pain is not required, ... it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.'" *Marsh v. Arn,* 937 F.2d at 1060 (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)).

The district court rejected the defendants' qualified immunity claim. We disagree with the district court and find, as a matter of law, that Knight failed to demonstrate that the defendants acted with "obduracy and wantonness."

Though Knight approached appellant Gill on numerous occasions to discuss his desire to be transferred to another cell, Knight merely spoke of "incompatibility problems." Moreover, Knight refused protective supervision pending a hearing to determine whether to reassign him to a different cell. Though Knight claims that the conditions in the "hole" are harsh, his stay there would have been temporary, and he would have been separated from Loran.

Contrary to Knight's claim, the defendants did not have "actual knowledge that the threat to Plaintiff's safety was imminent and extreme." Appellee's Brief at 16. Though Loran and Knight purportedly scuffled hours before the scalding water incident, Knight did not report the incident to prison officials. Accordingly, the district court's finding that "Defendant Gill was notified of the immediate danger and refused to take action to transfer the plaintiff to another cell," District Court's July 31, 1992 Memorandum at 2, is wholly unsupported by the record. *See Marsh v. Arn,* 937 F.2d at 1061 ("Viewing the evidence in the light most favorable to Marsh, it establishes only that Amis knew of Leonard's previous two fights among inmates and that she knew Marsh wanted to change rooms. This evidence is insufficient to raise a jury question as to whether Amis had actual knowledge of a genuine, or has [sic] one court put it, a 'specific' risk of harm to Marsh.").

With respect to defendants Smith and Wigginton, Knight fails to demonstrate that their training and supervision was deficient. In fact, Knight relies on a fact cited by the defendants to create a theory under which they might be liable. Specifically, when moving for summary judgment, Smith and Wigginton noted that the correctional complex had the second lowest assault rate among medium security Kentucky prisons. In response, Knight asserted that because the correctional complex was one of Kentucky's safest prisons, the defendants "had a duty to keep a constant vigil on the violent and psychotic inmates within their facility." As a theory of Eighth Amendment liability, this tortured argument fails to provide any basis upon which reasonable prison officials in Smith's and Wigginton's positions would have thought that they were violating Knight's rights.

Because the record fails to support the district court's findings with regard to the defendants' alleged deliberate indifference, we need not determine whether the otherwise applicable principles of law were clearly established at the time of the incident.

### III.

We vacate the district court's order and grant summary judgment to the defendants for the aforementioned reasons.