ISHAAQ, Plaintiff,

v.

Billy COMPTON, et al., Defendants.

No. 95-2015-M1/Bre.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 4, 1995.

Ishaaq, pro se.

## ORDER OF DISMISSAL

McCALLA, District Judge.

Plaintiff, who changed his name from Alonzo Stewart to Ishaaq, an inmate at Brushy Mountain State Prison (Brushy) who was formerly confined at West Tennessee High Security Facility (WTHSF) in Henning, Tennessee, filed this third complaint under U.S.C. § 1983.

Plaintiff sues former Tennessee Department of Correction (TDOC) Commissioner Christine Bradley, former assistant commissioner Linda Dodson, WTHSF warden Billy Compton, WTHSF unit manager Charles Piphus, WTHSF correctional officer Charles Lawson, and WTHSF corporal Norman Layne. On March 30, 1994, Piphus refused plaintiff's request for a telephone call because he had insufficient funds in his inmate trust fund account. Between April and August of 1994, plaintiff pursued a series of grievances at various levels of TDOC over this refusal, but the grievances were all denied. He alleges the refusal of a telephone call interfered with his right of access to the courts.

During those same months, plaintiff pursued a series of grievances regarding the condition of paint on the shower walls in his unit. Although Piphus and Compton investigated the condition of the showers, plaintiff remained convinced that they were too dirty

and was dissatisfied with their responses to his grievances.

On July 18, 1994, while the inmates in plaintiff's unit were agitated over the shower's condition, he and a number of other inmates were kicking their cell doors. Lawson charged plaintiff and four other inmates with destroying state property, allegedly solely because they were kicking the doors. A disciplinary board convicted plaintiff of this prison disciplinary offense and imposed a penalty of five days punitive segregation. Compton denied his appeal and Dodson rejected his further appeal on procedural grounds.

In August of 1994, Lawson seized plaintiff's radio.

In September of 1994, plaintiff commenced a hunger strike to protest the above situations. While he was refusing food, he was taken from his maximum security unit in handcuffs to the recreation yard. The yard contains individual recreation cages where maximum security inmates are permitted separate recreation. Another inmate in a closed cage yelled threats at plaintiff and put his arm, with a knife in his hand, through the cage door. Lawson allegedly pushed him a little towards the other inmate but another guard pulled him back. That same day, September 28, Piphus called him "Slim," said he looked like a ghost, and asked if he needed to go to the hospital. On September 30, the same inmate had another knife in his recreation cage. Plaintiff does not allege that he was ever harmed. On October 5 he was transferred to Brushy.

Plaintiff alleges the denial of grievances, disciplinary conviction, verbal threats, and transfer violated his First, Eighth, and Fourteenth Amendment rights, and that the defendants have engaged in a conspiracy to retaliate against him.

■■■ Plaintiff's due process claims are frivolous. An inmate has no right not to be charged with or even convicted of prison disciplinary .offenses, only a right to due process if the conviction deprives him of a liberty interest recognized by federal law. *See generally Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974) (defining scope of due process application to prison disciplinary hearings).[1] In general,

> "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."

*Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Thus, there is no federal constitutional right to be held in a prison system's general population, or in a particular part of a prison. *See Hewitt v. Helms,* 459 U.S. 460, 468–69, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell,* 418 U.S. at 556–57, 94 S.Ct. at 2974–75.

Until recently, prison disciplinary cases were analyzed by considering whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal government] has created a protected liberty interest." *Hewitt v. Helms,* 459 U.S. at 472, 103 S.Ct. at 871.

■■■ Quite recently, however, in *Sandin v. Conner,* —— U.S. ——, ——––––, 115 S.Ct. 2293, 2300–02, 132 L.Ed.2d 418 (1995), the Supreme Court, without explicitly overruling *Hewitt,* returned to the question left

---

1. Even when a liberty interest is at stake, the scope of due process in prison disciplinary cases is very narrow. *See Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (disciplinary board members protected by qualified immunity); *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774–75, 86 L.Ed.2d 356 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager); *Ponte v. Real,* 471 U.S. 491, 495–99, 105 S.Ct. 2192, 2195–97, 85 L.Ed.2d 553 (1985) (disciplinary board need not make contemporaneous record of reasons live witnesses for inmate not allowed); *Baxter v. Palmigiano,* 425 U.S. 308, 319–323, 96 S.Ct. 1551, 1558–60, 47 L.Ed.2d 810 (1976) (disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); *Wolfel v. Morris,* 972 F.2d 712 (6th Cir.1992); *Hensley v. Wilson,* 850 F.2d 269 (6th Cir.1988); *Hudson v. Edmonson,* 848 F.2d 682 (6th Cir.1988); *Turney v. Scroggy,* 831 F.2d 135 (6th Cir.1987).

open in *Wolff*: whether inmates even have a liberty interest in freedom from segregation, punitive or administrative. The court concluded that they do not.

> The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of *Pardons v. Allen,* 482 U.S. 369 [107 S.Ct. 2415, 96 L.Ed.2d 303] (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., *Vitek,* 445 U.S. [480] at 493 [100 S.Ct. 1254 at 1263–1264, 63 L.Ed.2d 552] (transfer to mental hospital), and *Washington,* 494 U.S. [210] at 221–222 [110 S.Ct. 1028 at 1036–1037, 108 L.Ed.2d 178] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

> \*   \*   \*   \*   \*   \*

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Neither *Bell v. Wolfish,* 441 U.S. 520 [99 S.Ct. 1861, 60 L.Ed.2d 447] (1979), nor *Ingraham v. Wright,* 430 U.S. 651 [97 S.Ct. 1401, 51 L.Ed.2d 711] (1977), requires such a rule.... We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.... We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Sandin,* —— U.S. at —— - ——, 115 S.Ct. at 2300–02 (footnotes and some citations omitted). *Sandin* thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.,* —— U.S. at ——, 115 S.Ct. at 2299. Absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.,* —— U.S. at ——, 115 S.Ct. at 2300–01. Thus from now on the federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in connection with confinement to disciplinary or administrative segregation or transfers, nor to the subjective motives of prison officials for effecting such changes. Instead, the court focuses first on the nature of the deprivation itself.

■ After *Sandin,* mere confinement to segregation, punitive or administrative, and mere transfers do not constitute "atypical and significant hardships" "in relation to the ordinary incidents of prison life" for an inmate, and thus cannot amount to the deprivation of a liberty interest. As plaintiff has not alleged any atypical and significant hardship, he is not entitled to any of the procedural protections enunciated in *Wolff* or its progeny. He thus has no due process claim.

Examined in this light, Ishaaq's claim that his rights were violated by the transfer also fails. He alleges no harm or hardship from the transfer, regardless of the motivation of the prison officials who ordered it. Indeed, he was actually better situated in that he was no longer confined near an inmate who had threatened him. His subjective displeasure at the transfer is irrelevant. As plaintiff suffered no atypical or significant change in the conditions of his sentence, he suffered no cognizable injury, regardless of the motivation of the prison officials in transferring him.

Moreover, even before *Sandin* TDOC inmates had no protected right to be housed in a particular TDOC institution. *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75

L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). *Sandin's* rejection of the entire *Hewitt* mandatory-language liberty-interest-creation paradigm, —— U.S. at ——, 115 S.Ct. at 2300–02, reemphasizes the absence of any constitutional claim over the prison to which an inmate is sent.

This conclusion is underscored by *Sandin's* reliance on *Olim v. Wakinekona*, 461 U.S. 238, 249–50, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983), in which the court held that an inmate's transfer to California from a Hawaii prison did not work a substantial hardship or deprive him of a constitutional right. If a six-thousand mile transfer is not atypical and significant, neither is a four-hundred mile intra-state transfer.

■ As is clear from the above discussion, plaintiff has no retaliation claim because he has not suffered any constitutionally cognizable injury. Even if he had suffered such an injury, however, his claim that the defendants have acted in retaliation for his protected First Amendment activity is completely without merit. In the context of prison cases, claims of retaliatory administrative action must be analyzed under Fourteenth Amendment principles of substantive due process. *Cale v. Johnson*, 861 F.2d 943, 949 (6th Cir.1988). Such claims must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Furthermore, an inmate claiming retaliation for an exercise of first amendment rights must show more than subsequent adverse administrative action. Rather, the prison official's conduct must transcend all bounds of reasonable conduct and shock the conscience. *Williams v. Smith*, 717 F.Supp. 523, 525 (W.D.Mich.1989). *See also Mayberry v. Spicer*, 808 F.Supp. 563, 567 (E.D.Mich.1992) (following *Williams* ). The prison official's alleged conduct must constitute "an egregious abuse of governmental power." *Cale*, 861 F.2d at 950.

■ Here, plaintiff has alleged no chronology of events from which retaliation could be plausibly inferred. Furthermore, a prison disciplinary conviction and confinement to segregation as a penalty for disrespect does not in the least "egregiously abuse governmental authority" or "transcend all bounds of reasonable conduct and shock the conscience" of the court. *Williams v. Kling*, 849 F.Supp. 1192, 1196 (E.D.Mich.1994); *Williams v. Smith*, 717 F.Supp. at 525; *Mayberry*, 808 F.Supp. at 567.

■ Furthermore, and inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory. *Smith v. Halford*, 570 F.Supp. 1187, 1194–95 (D.Kan.1983). *Cf. Ward v. Dyke*, 58 F.3d 271, 274–75 (6th Cir.1995) (retaliation claim not made out simply by alleging inmate transferred after filing numerous grievances, even though prison authorities openly admitted transfer based on numerous grievance filings—plaintiff did not suffer a cognizable injury). If that were so, than every prisoner could obtain review of non-cognizable claims merely by filing a lawsuit or grievance and then perpetually claiming retaliation. Even if the defendant prison officials did transfer plaintiff because of his habit of filing numerous grievances, they did not violate his rights. A plaintiff cannot bootstrap a frivolous complaint with a conclusory allegation of retaliation.

■ To the extent that the complaint should be construed as claiming that TDOC grievance procedures create a liberty interest in plaintiff being allowed to file grievances without being subjected to retaliation, his claim is doomed under *Sandin* by the want of a cognizable injury. Even apart from *Sandin*, however, mere procedures do not create any substantive liberty interest, even when phrased in mandatory language. *See McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir.1995). To the extent that plaintiff relies on TDOC's grievance procedures, his claim is frivolous.

■ Plaintiff also has no claim because his grievances were denied. There is no constitutional right to an effective grievance procedure. *See, e.g., Flick v. Alba*, 932 F.2d

728, 729 (8th Cir.1991); *Flowers v. Tate,* 925 F.2d 1463 (6th Cir.1991); *Spencer v. Moore,* 638 F.Supp. 315, 316 (E.D.Mo.1986); *Azeez v. DeRobertis,* 568 F.Supp. 8, 10 (N.D.Ill.1982).

Plaintiff's due process claims, procedural or substantive, lack an arguable basis either in law or in fact, and are therefore frivolous. *See Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989).

▆ Plaintiff's First Amendment claim based on the denial of a telephone call is also meritless. Pro-se litigants, including prison inmates, have a constitutional right, as enunciated in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), to *access to the courts. Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985). The Sixth Circuit has specifically held that the right of access to the courts requires affirmative assistance for inmates "only in the preparation of legal papers in cases involving constitutional rights and other civil rights actions *related to their incarceration." Knop v. Johnson,* 977 F.2d 996, 1009 (6th Cir.1992) (emphasis added). *See also John L. v. Adams,* 969 F.2d 228, 236 (6th Cir.1992).

The essence of this right is, however, the access itself, not the convenience of the access. Convenience is not a right of constitutional magnitude. *Mintzes,* 771 F.2d at 932. Any inconvenience an inmate experiences in handling a lawsuit is merely "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Hewitt v. Helms,* 459 U.S. at 467, 103 S.Ct. at 869.

Whether an institution's restrictions on means of access are unconstitutional must be determined in light of the restrictive scope of judicial review and control of penal regulations. State prison officials are entitled to generous leeway in operating prisons, and courts should accede to their expertise unless deprivations of constitutional rights force judicial intervention. *See generally Bell v.* *Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979); *United States v. Michigan,* 940 F.2d 143 (6th Cir. 1991). The choice among various methods of guaranteeing access to the courts lies with prison administrators, not inmates or the courts. *Knop,* 977 F.2d at 1008.

> The alternative avenues open to state authorities to protect a prisoner's right of access to the courts are precisely that—alternatives. The choice between alternatives lies with the state. A prisoner who chooses not to avail himself of the alternative provided has no basis—constitutional or otherwise—for complaint.

*Holt v. Pitts,* 702 F.2d 639, 640–41 (6th Cir. 1983). Clearly, plaintiff has no right to a specific variety of assistance. He is merely entitled "to access—which means getting the courthouse door opened in such a way that it will not automatically be slammed shut on [him]." *Knop,* 977 F.2d at 1006–07.

Thus, plaintiff's assertion that he was not provided with a telephone call to his attorney on one isolated occasion is frivolous.

Furthermore, in order to allege an unconstitutional restriction on the *Bounds* right, an inmate must plead and prove he was actually impeded in his ability to conduct a particular case. *Mintzes,* 771 F.2d at 932; *Strickler v. Waters,* 989 F.2d 1375, 1383 n. 10 (4th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) (citing numerous cases requiring some actual prejudice as an essential component of a *Bounds* claim); *Jones v. Franzen,* 697 F.2d 801, 803 (7th Cir.1983). The inmate must have suffered some actual interference with the case, such as missing a court deadline, the dismissal of an action that would have otherwise proceeded, or the imposition of sanctions. *Weaver v. Toombs,* 756 F.Supp. 335, 340 (W.D.Mich.1989). *See also Martin v. Davies,* 917 F.2d 336, 340 (7th Cir.1990) (claim of interference with court-access must be supported by factual allegations of missed court-dates, loss of a won case, or an inability to file on time). As plaintiff alleges no such interference, his *Bounds* claim also lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton,* 504 U.S. at 31, 112

S.Ct. at 1732; *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831.

█ Plaintiff's Eighth Amendment claims are also meritless. The Eighth Amendment prohibits cruel and unusual punishment. *See generally Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The Eighth Amendment proscription on cruel and unusual punishment encompasses an inmate's right to personal safety. *Stewart v. Love,* 696 F.2d 43, 44 (6th Cir.1982). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324. The objective component requires that the deprivation be "sufficiently serious." *Farmer,* — U.S. at —, 114 S.Ct. at 1977; *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999; *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer,* — U.S. at —, 114 S.Ct. at 1977; *Wilson,* 501 U.S. at 297, 302–03, 111 S.Ct. at 2323, 2326. The official's intent must rise at least to the level of deliberate indifference. *Farmer,* — U.S. at —, 114 S.Ct. at 1977; *Wilson,* 501 U.S. at 303, 111 S.Ct. at 2327.

The Eighth Amendment thus requires a serious threat to the inmate's personal safety. *Knight v. Gill,* 999 F.2d 1020, 1022 (6th Cir.1993); *Nelson v. Overberg,* 999 F.2d 162, 165 (6th Cir.1993); *Marsh v. Arn,* 937 F.2d 1056, 1060 (6th Cir.1991); *Walker v. Norris,* 917 F.2d 1449, 1454 (6th Cir.1990); *Roland v. Johnson,* 856 F.2d 764, 769 (6th Cir.1988); *McGhee v. Foltz,* 852 F.2d 876, 881 (6th Cir.1988); *Stewart,* 796 F.2d at 44. The Supreme Court has recently reiterated that an Eighth Amendment claim requires a showing that an inmate "is incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* — U.S. at —, 114 S.Ct. at 1977.

The Supreme Court has also clarified the subjective component: the intent of the prison official. *See, e.g., Farmer,* — U.S. at —, 114 S.Ct. at 1977. *Cf. Wilson,* 501 U.S.

at 298–301, 111 S.Ct. at 2324–25; *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir.1992).

According to *Farmer,* deliberate indifference requires that the inmate prove that an officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* — U.S. at —, 114 S.Ct. at 1979. *Cf. Walker v. Norris,* 917 F.2d at 1454 (prison official displays deliberate indifference when "he causes unnecessary and wanton infliction of pain on the [inmate] by deliberately disregarding a serious threat to the [inmate]'s safety after actually becoming aware of that threat").

Prison officials are not liable under the Eighth Amendment for an injury to an inmate merely because they are on duty at the time one inmate attacks another. *See Gibson v. Foltz,* 963 F.2d 851, 853–54 (6th Cir. 1992); *Marsh v. Arn,* 937 F.2d at 1067–69.

In this case, plaintiff has not alleged either component of an Eighth Amendment personal safety claim. He does not allege that any inmate actually even had an opportunity to harm him. At most, another inmate on two occasions displayed a homemade shank and shouted threats. However, the inmate was confined in a area separate from plaintiff and plaintiff does not allege that the inmate could have possibly reached him or posed a serious risk. Thus plaintiff's claim fails for want of the objective component.

Furthermore, this claim fails to allege the subjective component either. Plaintiff does not allege that any of the defendants were aware of any risk before the other inmate made his threats. More importantly, soon after the threats, prison officials seemingly reacted to remove plaintiff from even the potential for future risks by transferring him to a different institution. Plaintiff does not allege that he is in any danger or exposed to any risks at Brushy. This Eighth Amendment personal safety claim also lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton,* 504 U.S. at

31, 112 S.Ct. at 1733; *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831.

 Plaintiff's Eighth Amendment claim regarding the condition of the showers also fails. Eighth Amendment prison condition claims also are subject to the two-part test enunciated above.

Regarding claims that prison conditions constitute a deprivation sufficiently serious to meet the objective component of an Eighth Amendment claim, the court's inquiry must focus on whether inmates are deprived of the "minimal civilized measure of life's necessities." *Wilson v. Seiter,* 501 U.S. at 298, 111 S.Ct. at 2324 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). The Constitution " 'does not mandate comfortable prisons.' " *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324 (quoting *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400). (6th Cir.1988); *Stewart,* 796 F.2d at 44. In considering the types of conditions that constitute a substantial risk of harm, the court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.,* that society does not choose to tolerate this risk in its prisons. *Helling v. McKinney,* —— U.S. ——, ——, 113 S.Ct. 2475, 2482, 125 L.Ed.2d 22 (1993).

Here, plaintiff alleges that the showers were very dirty and that they were not properly cleaned. However, his allegations do not satisfy the subjective component of an Eighth Amendment claim. He alleges no real serious risk to his health. The allegation that he could see bacteria growing under fresh paint, after the showers were painted, is "clearly baseless," "fanciful," "fantastic," or "delusional." *Denton v. Hernandez,* 504 U.S. at 32–33, 112 S.Ct. at 1733–34. To the extent that he alleges that the showers were dirty, he has not alleged conditions so bad that society chooses not to tolerate them.

This claim also fails to allege the subjective component. On the contrary, the complaint demonstrates that prison officials repeatedly responded to complaints about the condition of the showers and attempted to remedy those problems. Plaintiff's Eighth Amend-

ment conditions claims also lack an arguable basis either in law or in fact, and are therefore frivolous. *See Denton,* 504 U.S. at 31, 112 S.Ct. at 1733; *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831.

 To the extent that plaintiff is attempting to assert an Eighth Amendment claim based on his disciplinary conviction, he has no claim. Neither classification or housing assignments, nor confinement to segregation, either administrative or punitive, implicates the cruel and unusual punishments clause of the Eighth Amendment. *See Hutto v. Finney,* 437 U.S. 678, 686, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978) (confinement to punitive isolation does not implicate cruel and unusual punishment unless conditions themselves are cruel and unusual); *Sheley v. Dugger,* 833 F.2d 1420, 1428–29 (11th Cir. 1987) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment," citing *Hutto* ); *Gibson v. Lynch,* 652 F.2d 348, 352 (3d Cir.1981), *cert. denied,* 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983) (same). *See also Hoptowit v. Ray,* 682 F.2d 1237, 1256 (9th Cir.1982) (classification decisions, in and of themselves, do not violate Eighth); *Gilland v. Owens,* 718 F.Supp. 665, 686 (W.D.Tenn.1989) (same, following *Hoptowit* ).

 As confinement to segregation, which triggers the liberty interest protected by the *Wolff* due process requirements, does not by itself implicate the cruel and unusual punishments clause, it follows *a fortiori* that the mere decision of a disciplinary board cannot constitute the "wanton and unnecessary infliction of pain," *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986), prohibited by the Eighth Amendment. Clearly, *Wolff* and *Sandin* apply a due process analysis to disciplinary proceeding claims, *see* —— U.S. at —— – ——, 115 S.Ct. at 2300–02; 418 U.S. at 555–560. As already discussed in full, confinement to segregation does not even constitute the deprivation of a liberty interest. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2302. Thus disciplinary proceedings, by themselves, cannot be said to inflict cruel and unusual pun-

ishment. Regardless of the subjective anxiety plaintiff has experienced as a result of being convicted of a disciplinary violation, he has not experienced either wanton and unnecessary pain or the loss of the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

To the extent that plaintiff complains because Piphus called him "Slim" or because Lawson or an inmate made threatening or harsh remarks or yelled at him, he has no Eighth Amendment claim.[2] Mere verbal harassment does not inflict pain so as to amount to the "obduracy and wantonness" required for a violation of the Cruel and Unusual Punishments Clause. *See Wilson v. Seiter*, 501 U.S. at 299, 111 S.Ct. at 2324; *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (verbal abuse or harassment does not constitute punishment under the Eighth Amendment). Just as the Constitution "does not mandate comfortable prisons," *Wilson v. Seiter*, 501 U.S. at 298, 111 S.Ct. at 2324, it does not mandate polite prison guards or officials or fellow inmates. Derogatory or abusive language and conduct do not give rise to a claim under § 1983. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Banks v. Klapish*, 717 F.Supp. 520 (W.D.Mich.1989); *Gilson v. Cox*, 711 F.Supp. 354 (E.D.Mich.1989); *Rahman v. Stephenson*, 626 F.Supp. 886, 888 (W.D.Tenn.1986). Further, there is no cause of action under § 1983 for harassment and intimidation by law enforcement officials. *Bacon v. Patera*, 772 F.2d 259 (6th Cir.1985).

Plaintiff's last Eighth Amendment claim, that he was deprived of food, is also frivolous. Plaintiff does not allege that the food was indelible or that it was harmful to him, merely that on one occasion he did not feel good after eating a meal, and he then decided that someone must be tampering with his food. He offers no support whatsoever for this speculative claim. Furthermore, he was not thereafter deprived of food, because rather than giving the prison officials to inquire about the food and to ensure he was provided a proper diet, he embarked on a hunger strike. It is further clear from the complaint that the strike was to protest the entire sequence of events between March, when he was refused one phone call, and the end of August, not merely because he arrived at the unsupported conclusion that his food was unsafe. A prisoner cannot fabricate an Eighth Amendment claim by deciding to not eat on the basis of paranoid speculation.

Plaintiff's Eighth Amendment claims all lack an arguable basis either in law or in fact, and are therefore frivolous. *See Denton*, 504 U.S. at 31, 112 S.Ct. at 1732; *Neitzke*, 490 U.S. at 325, 109 S.Ct. at 1831.

Finally, plaintiff's claim that Lawson took his radio is meritless. Claims for deprivation of property are not actionable under section 1983. *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). This claim also lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton*, 504 U.S. at 31, 112 S.Ct. at 1732; *Neitzke*, 490 U.S. at 325, 109 S.Ct. at 1831.

As the complaint is frivolous, it is **DISMISSED** pursuant to 28 U.S.C. § 1915(d).

The final issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis*. Twenty-eight U.S.C. § 1915(a) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Ac-

---

**2.** In any event, the inmate did not act under color of state law, and could not thereby violate plaintiff's rights. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *United States Ex Rel. Miller v. Twomey*, 479 F.2d 701, 719 (7th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). To the extent that plaintiff raises a personal safety claim against prison officials because they did not prevent a prisoner from yelling at him, his Eighth Amendment rights have clearly not been violated.

cordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis. See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2nd Cir.1983). The same considerations that lead the court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore **CERTIFIED,** pursuant to 28 U.S.C. § 1915(a), that any appeal in this matter by plaintiff, proceeding *in forma pauperis,* is not taken in good faith.

**IT IS SO ORDERED.**