William B. MILLER, Plaintiff–Appellant,

v.

George FIELD and Officer Crippen,
Defendants–Appellees.

No. 92–2204.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 9, 1994.

Decided Sept. 23, 1994.

Lawrence D. Hochman (argued and briefed), Hugh M. Davis, Jr., Hugh M. Davis, Jr., P.C., Detroit, MI, for plaintiff-appellant.

E. Michael Stafford, Asst. Atty. Gen. (argued and briefed), David M. Gadaleto, Office of the Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellees.

Before: MARTIN, NELSON, and DAUGHTREY, Circuit Judges.

DAUGHTREY, Circuit Judge.

The plaintiff, William B. Miller, claims that while incarcerated in a Michigan penal institution, he was raped by another inmate. Miller filed an action under 42 U.S.C. § 1983 against the supervisor and two corrections officers of the prison camp where the alleged attack occurred, contending that he was subjected to cruel and unusual punishment because the officials had been apprised of the threats of assault made against Miller but had taken no steps to prevent such an attack,

thereby evidencing deliberate indifference to his safety. Based upon the jury's determination that the alleged rape did not, in fact, occur, the district court entered judgment in the defendants' favor. Miller has raised several issues on appeal, one of which is dispositive and requires that we reverse the judgment and remand the case for retrial.

That issue involves the admissibility of Michigan State Police reports concerning the investigation of the rape charge, which were introduced into evidence over plaintiff Miller's hearsay objection to the documents. The district judge ruled the reports admissible in their entirety, relying upon this court's unpublished opinion in *Neal L. Roland v. Perry Johnson, et al.*, 933 F.2d 1009 (6th Cir.1991), 1991 WL 84346, at page 4 (*Roland II*), filed following the order of remand in *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988). After a careful study of the record, we conclude that our opinion in *Roland II* is inapplicable to the facts in this case.

Those facts establish that in October 1985, plaintiff Miller was incarcerated at Camp Cusino in Alger County, Michigan. Miller alleges that during the last week of that month, he had received threats from several inmates that he would be raped in retaliation for challenging an inmate named Robert Bills. The plaintiff claims that he informed George Field, the camp supervisor, and Officer Crippen of the threats but that both officials ignored the complaints. Miller maintains that he was attacked by several inmates and raped by Bills in the camp bathroom on the evening of November 3, 1985. Despite suffering the alleged beating and rape, Miller did not immediately report the incident to authorities and did not seek prompt medical attention. Instead, Miller and a compatriot, Scott Konjer, escaped from Camp Cusino and, upon their recapture, raised the defense of duress, insisting that they had escaped from the facility in order to avoid further threats and assaults. Even at the trial of Miller's § 1983 complaint, the plaintiff testified, moreover, that he suffered no pain or medical complaints from the attack, other than headaches that he began suffering after being struck in the head during the assault.

During pretrial proceedings, the defendants had proffered as exhibits three investigatory reports from the Michigan State Police file pertaining to the alleged rape of Miller by Bills. The first of the reports consisted of a short summary of interviews by the reporting officer of four Camp Cusino inmates who, Miller alleged, had witnessed the assault. All four prisoners were noted as denying any knowledge of the assault. The reporting officer indicated that the alleged rapist, Bills, had been transferred to a different prison facility and was unavailable for an interview.

The second report summarized plaintiff Miller's recapitulation of the events that, he alleged, occurred in October and November, 1985. The third report summarized an interview with the local Michigan prosecutor. It contained information that the alleged perpetrators of the attack would not be charged by authorities because of the "lack of credibility of the victim" and because there was no evidence available to corroborate the victim's allegations.

When these reports were formally presented for admission at trial, the district judge initially ruled that they would have to be redacted to delete statements made by "third parties," as inadmissible hearsay. Counsel for the defendants responded that such a redaction would make the reports useless as evidence, and he argued forcefully that the entire file was admissible under authority of *Roland II*. In that case, defense counsel argued, the Sixth Circuit permitted the introduction of "a mammoth report, hundreds of pages ... of interviews by state police of prisoners relative to alleged rapes." He noted that "[a]ll of the statements [in the *Roland* reports] were hearsay statements of prisoners." He also argued that the summary of the interview with the state prosecutor in the instant case was admissible as "an opinion" and was therefore not a "hearsay statement" at all.

At that point in the proceedings, counsel for plaintiff tried to convince the district judge that the reports in question were "double hearsay" and that, even under Federal Rule of Evidence 803(8)(C), which permits the introduction of official reports as an ex-

ception to the rule against hearsay, the statements of extrajudicial declarants contained in those reports would themselves have to constitute a hearsay exception in order to be admissible. Nevertheless, the district judge, relying on defense counsel's characterization of the ruling in *Roland II* and giving Rule 803(8) a broad reading, ultimately declared the reports admissible and allowed them to go to the jury. We conclude that the district judge erred in this ruling.

Although Federal Rule of Evidence 802 generally prohibits the introduction of hearsay testimony in the federal courts, Rule 803 lists 24 categories of evidence that "are not excluded by the hearsay rule, even though the declarant is available as a witness." In particular, Rule 803(8) allows into evidence:

> Records, *reports,* statements, or data compilations, in any form, of public offices or agencies, *setting forth* (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by the police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, *factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.*

(Emphasis added.) As explained in the notes prepared by the Advisory Committee on the Rules, "[j]ustification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record."

The Supreme Court has further determined that Rule 803(8)(C) allows for admission of reports containing opinions and conclusions, as well as facts. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169–70, 109 S.Ct. 439, 449–50, 102 L.Ed.2d 445 (1988). In *Beech Aircraft Corp.,* the Supreme Court held, "As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be ad-

missible along with other portions of the report." *Id.* at 170, 109 S.Ct. at 450.

The Advisory Committee Notes "assume[ ] admissibility [of the report] in the first instance." In light of that presumption, therefore, "[t]he burden [is] upon the [opponent] to show that the report was inadmissible because its sources of information or other circumstances indicated a lack of trustworthiness." *Baker v. Elcona Homes Corp.,* 588 F.2d 551, 558 (6th Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979). Furthermore, this court stated in *Baker:*

> In determining whether the "sources of information or other circumstances" indicate lack of trustworthiness, the Advisory Committee Notes list four suggested factors for consideration: (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held on the level at which conducted, and (4) possible motivational problems.

*Id.*

■ Although we review the factual components of a district court's evidentiary determinations under the abuse of discretion standard, *United States v. Rios,* 842 F.2d 868, 874 (6th Cir.1988) (per curiam), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989), we review *de novo* the legal components of those determinations. *United States v. Levy,* 904 F.2d 1026, 1029 (6th Cir.1990) (whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence is a legal issue subject to *de novo* review), *cert. denied sub nom., Black v. United States,* 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). As an example, in *United States v. Gessa,* 971 F.2d 1257, 1261 (6th Cir.1992) (en banc), we examined the admission of evidence of "other acts" of a defendant under Fed.R.Evid. 404(b) and noted, "First, it must be determined as a matter of preliminary fact whether there is sufficient evidence that the prior act occurred. Second, a legal determination must be made whether the 'other act' allegedly committed by the defendant was admissible as evidence of 'intent, preparation, [or] plan.' "

■ The district court in this case did not abuse its discretion in determining that the state police reports in question qualify as records or reports of a public agency for purposes of Rule 803(8). *Baker,* 588 F.2d at 556. Hence, the district court was correct in analyzing the plaintiff's objection to introduction of the evidence under that evidentiary rule. Even though the correct legal standard was thus employed by the district court, we conclude that the district judge misapplied that standard in this instance.

Although conclusions and opinions may also be contained in the document, *Beech Aircraft Corp., supra,* to be admissible under Rule 803(8)(C)'s exception to the hearsay rule, "a report must first be a set of 'factual findings.'" *Bright v. Firestone Tire & Rubber Co.,* 756 F.2d 19, 22 (6th Cir.1984), *citing Baker, supra.* The "factual findings" in a report qualifying for a Rule 803(8)(C) exception to the hearsay rule must, however, be based upon the knowledge or observations of the preparer of the report. As stated in the Advisory Committee Notes to Rule 803, "[i]n a hearsay situation, the declarant is, of course, a witness and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge. It may appear from his statement or be inferable from circumstances." Additionally, the comments note that "[p]olice reports have generally been excluded *except to the extent to which they incorporate firsthand observations of the officer.*" (Emphasis added.)

■ Obviously, much of the police reports admitted into evidence at the trial of this matter was not based upon such firsthand knowledge or observation. The statistical information regarding the initiation and conclusion of the police investigation was certainly obtained through firsthand information. Furthermore, the fact that certain interviews actually took place and the fact that the local prosecutor elected not to press charges against the inmates accused by Miller were pieces of information known or observable by the police officials themselves. Such evidence was, therefore, within the recognized exception to the hearsay rule and was admissible at trial.

Other information contained in the report submitted for the jury's consideration was not, however, part of any factual finding made through firsthand observation. Rather, the statements of the victim, the alleged assailants, and various witnesses, as well as any statements by the prosecutor regarding reasons for not pursuing criminal charges against certain individuals, contained hearsay information, not facts observed by the preparer of the police report.

This court has previously recognized "that factual findings, which are based on inadmissible hearsay, are not admissible under Rule 803(8)(C) because the underlying information is untrustworthy." *Complaint of Paducah Towing Co., Inc. (United States v. Paducah Towing Co., Inc.),* 692 F.2d 412, 420–21 (6th Cir.1982). *See also Miller v. Caterpillar Tractor Co.,* 697 F.2d 141, 144 (6th Cir.1983) (court did not abuse discretion in refusing to admit as untrustworthy a document that relied upon hearsay statements of witnesses made to the investigator). Other courts have reached similar conclusions when faced with analogous situations. *See* cases cited in *Complaint of Paducah Towing Co., Inc.,* 692 F.2d at 421. For example, in *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907 (2d Cir. 1991), the Second Circuit held:

> [A statement of a third party] is plainly not admissible merely because contained in a police report. "It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not.*" *United States v. Pazsint,* 703 F.2d 420, 424 (9th Cir.1983) (emphasis added).

Such a result appears eminently reasonable in light of the stated justification for the Rule 803(8)(C) exception to the general prohibition on receipt of hearsay evidence. While a court may presume that a *preparer of a report,* under a duty to relate information, will perform the task required and formulate justified conclusions and reasonable opinions based on evidence *actually observed by the preparer,* no such presumption arises when the preparer relies on potentially untrustworthy hearsay evidence from another

individual under no duty to provide unbiased information.

The bulk of the Michigan State Police reports introduced as evidence at trial contains neither factual findings made by the report's preparers nor conclusions and opinions based upon such factual findings. Instead, the reports are largely a recitation of statements of other individuals that fall under no other exception to the hearsay rule. Because those statements of the victim, the alleged assailants, other witnesses, and the local prosecutor are, therefore, hearsay within hearsay, that evidence should not have been placed before the jury in this case.

Nor does the ruling in *Roland II* furnish a basis for permitting introduction of the police reports at issue here. The central dispute in the *Roland* case was not whether certain injuries to the plaintiff had actually occurred, but "whether the defendants were deliberately indifferent to his safety" and, therefore, liable for those injuries. *Roland v. Johnson,* 856 F.2d at 769. In order to establish "deliberate indifference," a § 1983 plaintiff must show, among other things, that prison officials had knowledge of conditions that presented a threat to the plaintiff's safety. As we noted in *Roland II,* in passing on the admissibility of reports resulting from an investigation into "homosexual violence" in a Michigan state prison:

> The district court found the police and Justice Department reports would be helpful to the jury in determining whether the defendant acted with deliberate indifference.

*Neal W. Roland v. Perry Johnson, et al.,* 933 F.2d 1009 (6th Cir.1991), 1991 WL 84346, at page 4.

Hence, the purpose for which the police reports in *Roland* were introduced was not to prove the truth of the third-party statements contained in the reports, but to establish the effect of the reports on the prison officials who, presumably, reviewed them. Introduced for this purpose, the *Roland* reports were not hearsay and did not present the hearsay problem involved here, *i.e.,* use of the reports to discredit the plaintiff and to disprove his account of the assault by various inmates and, particularly, the rape commit-

ted by Bills. Obviously, these third-party statements, including the "opinion" of the local prosecutor that Miller's account was not credible and could not be corroborated, depended for their relevance on the truth of their contents, which makes them inadmissible hearsay. This distinction between statements in police reports that are *non*-hearsay and those that *are* hearsay leads us to conclude that the holding in *Roland II* is wholly inapplicable to the facts in this case.

■ Finally, we note that the district judge intimated in his evidentiary ruling that the police reports at issue in this matter could also be admitted under the "residual hearsay exception" of Rule 803(24). Pursuant to that provision of the Federal Rules of Evidence, the following is not excluded by the hearsay rule of F.R.E. 802:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

The police report evidence to which the plaintiff so strenuously objects fails the stated test of Rule 803(24) by not providing "equivalent circumstantial guarantees of trustworthiness." The self-serving statements of Miller, his witness, and the alleged assailants contained in the report are inherently suspect when made outside the crucible of cross-examination. All of those declarants faced some type of additional criminal charge

at the time they made their statements to the state police. Consequently, the possibility certainly existed that they would tailor their comments to the investigator so as to promote their own best interests.

Similarly, there are no evident guarantees of the trustworthiness of the local prosecutor's statement that the victim was not credible and that evidence corroborating the accounts given by the plaintiff's witnesses was lacking. The police report itself contains absolutely no indication of what factors were considered by the prosecutor in reaching that decision. Absent some insight into the bases for the prosecutor's conclusions, the trustworthiness of those statements cannot be adequately evaluated.

■ Most of the statements contained in the Michigan State Police reports admitted into evidence in this case do not fall within any recognized exception to the hearsay rule. Consequently, the district court should not have allowed the reports to be presented as evidence in their entirety. Instead, only those portions of the reports that constituted either factual findings resulting from the firsthand knowledge of the report's preparer or opinions and conclusions derived from those facts should have been admitted into evidence. Moreover, the error in admitting the reports cannot be considered harmless under the facts of this case. The only reason for seeking introduction of the reports was to attempt to convince the jury that Miller's claim of a sexual assault was fabricated. No other evidence of such fabrication is contained in the record, and the extrajudicial declarants were not called as witnesses at trial. The jury's determination that officials knew of threats against Miller and that he was assaulted—but not raped—make it virtually impossible to conclude that the error in question was harmless.

A new trial therefore becomes necessary. Upon remand to the district court, the remaining issues raised on appeal can be addressed and, we trust, correctly resolved. For example, upon timely motion the complaint can be amended to include an allegation of non-sexual assault, as well as rape. Such an amendment will obviate any further controversy over expansion of the jury instructions and the verdict form to include assault as a potential basis for recovery, assuming that it is supported by evidence at trial.

For the reasons set out above, we RE-VERSE the judgment of the district court and REMAND this case for a new trial.