**Marcellette REYNOLDS, as the Personal Representative of the Estate of Stephen Neal, Plaintiff–Appellant,**

v.

**Harry GREEN, Correctional Officer, Detroit Woodward Corrections Center, Defendant–Appellee.**

No. 98–1128.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1999.

Decided July 26, 1999.

Daniel E. Manville (argued and briefed), Ann Arbor, Michigan, for Plaintiff–Appellant.

John L. Thurber (argued and briefed), Office of the Attorney General, Corrections Division, Lansing, Michigan, for Defendant–Appellee.

Before: WELLFORD, NELSON, and GILMAN, Circuit Judges.

GILMAN, Circuit Judge.

Marcellette Reynolds, as the personal representative of the estate of her deceased son Stephen Neal, appeals from an adverse jury verdict in a civil rights action brought under 42 U.S.C. § 1983. The key issue on appeal is whether the district court erred in refusing the request of Reynolds's counsel to correct an erroneous jury instruction in response to questions by the jury after deliberations had begun. Because the error in the instruction dealt with the core legal issue in the case and the failure to correct it was prejudicial, we **REVERSE** the judgment of the district court and **REMAND** the matter for a new trial.

## I. BACKGROUND

### A. Factual Background

In 1993, Neal was an inmate at the Detroit Woodward Corrections Center in Detroit, Michigan (the "Woodward Center"). Inmates at the Woodward Center are entitled to privileges not given to inmates at regular state prisons. In particular, they are entitled to leave the facility to obtain employment and to visit with family members. They are required to sign in and out when they leave and return to the facility.

On Friday, January 29, 1993, Neal left the Woodward Center to look for work, and returned on time later that day. Neal also had a social visit with his mother scheduled for Sunday, January 31, 1993 at 10 a.m.. Harry Green was on duty at the sign-out desk that Sunday morning. When Neal arrived at the sign-out desk at 10:10 a.m., he asked Green whether he could return exactly two hours after sign-out rather than at noon. Green sent him back to his room because Neal's floor had not yet been called. Approximately five minutes later, Green called that floor for sign-out. Upon Neal's return to the sign-out desk, Green accused him of having been absent without leave since the previous Friday. Green, however, had been at the desk when Neal returned from his job search on Friday, had specifically verified who he was, and therefore presumably knew that Neal was present at the Woodward Center over the weekend.

Green nevertheless insisted that Neal had been "AWOL." Neal then asked Green to have two other corrections officers, Hicks and Tupper, verify his presence over the weekend. Green declined to do so, and instead canceled the scheduled visit. He did, however, permit Neal to go to the parking lot and explain the situation to his mother. Shortly thereafter, Neal's mother approached Green and requested his name and badge number. Green refused to give her this information. Officers Hicks and Tupper then intervened. They informed Green that Neal had been in the facility over the weekend and permitted Neal to leave for his social visit.

The next day, Green issued two major misconduct tickets against Neal in connection with the events of January 31, 1993, one for threatening behavior and the other for incitement to riot. Because of these tickets, Neal was transferred to the Western Wayne Correctional Facility—a regu-

lar prison. A misconduct hearing relating to the January 31 events was convened while Neal was at Western Wayne. He was found not guilty on both of the major offenses charged by Green, but was found guilty on the minor offense of excessive noise. He thus became eligible for return to the Woodward Center. He was not returned, however, until approximately one year later.

## B. Procedural Background

In March of 1994, Neal filed a civil rights claim against Green pursuant to 42 U.S.C. § 1983. Neal claimed that he had a substantive due process right not to be intentionally subjected to false misconduct tickets, and that he had been subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Before the case came to trial, Neal died while out on parole. Reynolds was substituted as the personal representative of his estate.

At the beginning of the trial, counsel for Reynolds sought the admission into evidence of a report prepared by Christopher Olden of the Legislative Corrections Ombudsman's Office. The court ruled that the report was inadmissible because it contained "highly inflammatory, highly prejudicial statements that were not subject to cross-examination." At trial, Mr. Olden was permitted to testify as to his conclusions about the misconduct tickets.

The case was tried before a jury in January of 1998. At the close of arguments, the court orally instructed the jurors as follows:

In order to prove his claim that defendant Green wrote false misconduct charges to retaliate against [him] for his mother threatening to report him to his supervisors, the burden is upon plaintiff Neal to establish by a preponderance of the evidence each of the following elements:

... Third, that defendant Green wrote false misconduct charges against plain-

tiff Neal because of Mrs. Reynolds' statement on behalf of Mr. Neal....

The court also read aloud, and then provided the jurors with copies, of a verdict form setting forth the retaliation issue as follows: "Question number one: Was plaintiff's mother's statement to Officer Green on Stephen Neal's behalf the motivating factor behind Green's writing of the misconduct charges against Neal?" Counsel for Reynolds made no objection to either the instructions or the verdict form prior to the jury's retiring to deliberate.

On the first day of its deliberations, the jury passed a note to the district court regarding the verdict form. The note asked: "Is question number one to be interpreted as Mrs. Reynolds being a factor or the factor?" Counsel for Reynolds asked the court to make clear that retaliation need only be a motivating factor, which he argued was the prevailing legal standard. The district court, however, declined to change the language on the verdict form, stating as follows:

Now the verdict form says: Was plaintiff's mother's statement to Officer Green on Stephen Neal's behalf the motivating factor behind Green's writing, and I think they have to take it as it is written in the verdict form. I don't think I can otherwise modify that.

The district court then instructed the jury, saying "[y]ou have the instructions and the verdict form. I cannot add to that."

The following day, the jury sent another note to the district court that read: "It seems that we are unable to come to an agreement on verdict question number one. Any instructions?" The parties then agreed that the court would provide the jury with an *Allen* charge (asking the jury to work hard to reach a consensus, based upon *Allen v. U.S.*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)). After the charge was given, the jury resumed deliberations. Later that day, the parties agreed, and the court instructed, that six of the eight jurors would suffice for a verdict. The jury then asked, by note,

whether a majority would be sufficient, to which the district court responded in the negative.

On the morning of the third day of deliberations, counsel for Reynolds requested a supplemental instruction stating that the jury had to find that Reynolds's action was "a" motivating factor in Green's decision to write the misconduct tickets, not "the" motivating factor. Counsel for Green objected, stating as follows:

> [H]e agreed to this verdict form, and he is trying to change the rules in the middle of the game. It's not fair to myself or my client. We agreed to this. This is clear what the verdict form says. I don't think it is fair to me or my client to now, after two days of jury deliberation, to say, wait. We want to change what we are suppose [sic] to decide. That's not fair at this point. I mean, he could have brought that up when we went through the verdict form, and he didn't ask to change it.

Green's counsel further said that he would have argued his case differently if the proposed standard had been in place at the time of summation. Because the joint appendix does not include closing arguments, we cannot verify the extent to which Green's argument was based upon the legal standard set forth in the verdict form.

Counsel for Reynolds then provided the district court with case law regarding the applicable standard for retaliation cases, and with cases regarding a judge's duty to clarify an instruction when the jury is confused. After reviewing these cases, the district court concluded that Reynolds was not requesting an amplification or clarification, but a change in the verdict form.

Reynolds's counsel conceded that if the jury had not come out with questions, he would have had no right to request a change. He argued, however, that once the jury's confusion became manifest and enabled the district court to give a supplemental instruction, that it had a duty to do so. The district court stated, however, that it would not be fair to change the

instruction upon which both parties had agreed, and thus sent the jury back to deliberate with the original verdict form before them.

Later that morning, the jurors passed a final note asking whether the court or the lawyers had written the verdict form questions. The court responded that "[t]he instructions by the court include the verdict form." At about 11 a.m. that same morning, the jury finally reached a verdict. As to question one, whether Reynolds's statement to Officer Green was the motivating factor behind his writing the misconduct charges, the jury responded "no."

Reynolds timely filed her notice of appeal.

## II. ANALYSIS

### A. The district court's failure to provide the jury with the correct legal standard constitutes plain error

#### 1. Rule 51's objection requirement

Objections to jury instructions are governed by Rule 51 of the Federal Rules of Civil Procedure. The Rule provides:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court, at its election, may instruct the jury before or after argument, or both. *No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict,* stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Fed.R.Civ.P. 51 (emphasis added).

As noted above, Reynolds's counsel did not request a change in the jury in-

struction or verdict form until after the jury had retired and begun deliberating. Reynolds argues, however, her request for a change from "the factor" to "a factor" was a request for clarification rather than an objection to the instruction that would be governed by Rule 51. The verdict form is, however, unambiguous—it states that retaliation must be "the" motivating factor. We therefore agree with the district court that the difference between what Reynolds agreed to at the close of evidence and what she asked for after the jury passed its note is so fundamental as to constitute an objection to the instruction itself under Rule 51.

### 2. *Review for "plain error"*

Although the language of Rule 51 suggests that litigants must timely "use it or lose it," a litigant's failure to object to a jury instruction does not create a jurisdictional bar to review. *See, e.g., City of Springfield v. Kibbe*, 480 U.S. 257, 259, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987). We recognize that some circuits treat the failure to object to the instructions at the time and in the manner designated by Rule 51 as a procedural default, with the result that the jury instructions, even if erroneous, become the law of that particular case. *See La Amiga del Pueblo, Inc. v. Robles*, 937 F.2d 689, 690–91 (1st Cir.1991); *Murphy v. Dyer*, 409 F.2d 747, 748 (10th Cir. 1969). This principle has also been applied to special verdict forms: "Silence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections." *Putnam Resources v. Pateman*, 958 F.2d 448, 456 (1st Cir.1992).

None of the above cases, however, dealt with the present situation where the jury called into question a key instruction in the midst of its deliberations. Furthermore, this court has made an exception to the principle of non-reviewability in cases of "plain error." *See Harp v. Kroger Co.*, 489 F.2d 1104, 1105 (6th Cir.1974) (applying "plain error" standard to a review of jury instructions); *Wheeler v. McKinley Enter-*

*prises*, 937 F.2d 1158, 1166 (6th Cir.1991) (holding that because the jury instructions did not provide a basis in law for the jury to reach its decision, the district court's failure to clarify them constituted plain error).

Plain error is an "obvious and prejudicial" error that requires action by the reviewing court "in the interests of justice." *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987) (*quoting O'Brien v. Willys Motors, Inc.*, 385 F.2d 163 (6th Cir. 1967)). We agree with the Second Circuit's acknowledgment

> that consideration of alleged errors in a jury charge may be appropriate even absent objection where 'necessary to correct a fundamental error or to prevent a miscarriage of justice.' Certainly it is 'fundamental' error to give instructions which are hopelessly confusing and which fail 'to provide even the barest legal guideposts to aid the jury in rationally reaching a decision.

*Frederic P. Wiedersum Assoc. v. Nat'l Homes Constr. Corp.*, 540 F.2d 62, 66 (2d Cir.1976) (internal and external citations omitted).

### 3. The district court's failure to supply the proper legal standard before the jury had returned a verdict constituted "plain error"

### a. The district court allowed the jury to deliberate under an incorrect legal standard that affected the core issue of the case and resulted in prejudice

Under *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), Reynolds had the burden of proving that Neal's protected conduct was "a substantial or motivating factor" in Green's decision to write false misconduct tickets against him. *See also Ballard v. Campbell*, 124 F.3d 196, 1997 WL 592810, at *1 (6th Cir. Sept.24, 1997) (holding that summary judgment for the defendants was

proper because Ballard had not alleged facts supporting his claim of retaliation). The verdict form in this case, which implied that a retaliatory motive had to be the *only* factor in Green's decision, therefore held Reynolds to a higher standard than is required by the controlling law. We must thus decide whether the district court's refusal to rectify the legal error in the verdict form amounted to "plain error."

Green cites *Dotson v. Scotty's Contracting, Inc.*, 86 F.3d 613 (6th Cir.1996), in support of his contention that there was no plain error in this case. In *Dotson*, the plaintiff's counsel objected generally to the jury instructions proposed by the court, but never specifically objected to any one of them. After the jury returned a verdict for the defendant, the plaintiff appealed, arguing that an instruction to which she had not specifically objected constituted plain error. This court disagreed.

The present case is distinguishable from *Dotson* in several ways. First of all, the jury in *Dotson* did not express confusion with the instructions that it was given. Second, counsel did not object to the questioned instruction until the appeal. Finally, the challenged instruction in *Dotson* was, according to this court, arguably consistent with Kentucky law. *See id.* at 617. In contrast, there is no dispute that question one on the verdict form in the present case does not comport with the federal law on retaliation by a government official.

The Second Circuit has stated that an instruction constitutes plain error when it "misapplies the law as to a core issue in the case resulting in the substantial prejudice of the party challenging the instruction on appeal." *Latsis v. Chandris, Inc.*, 20 F.3d 45, 50 (2d Cir.1994), *aff'd*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). We agree with this formulation. In the present case, there is no doubt that the verdict form in question dealt with the core issue, i.e., whether Green had acted in retaliation against Neal and his mother.

As explained above, the verdict form misapplied the law.

We also find that the erroneous verdict form caused substantial prejudice. It is clear from the jury's questions that they struggled with the verdict. For instance, after the parties agreed that they would not require a unanimous verdict, but would accept consensus among six of the eight jurors, the jurors recommenced deliberations and then asked whether a majority would suffice. It is also clear that the language on the verdict form played a major role in their difficulty in deciding the case. Because the jury asked whether "the factor" simply meant "a factor," we can infer that its answer would have been different depending upon the meaning given. Later in the jurors' deliberations, they asked whether the court or the attorneys had drafted the instructions and verdict form, signaling that the language was still a source of their deadlock. Thus it is more probable than not that had the verdict form reflected the correct legal standard, the outcome of the trial would have been different.

b. The purpose of Rule 51 is best served by amending the verdict form when, as here, doing so would not have resulted in prejudice and would have averted a lengthy appeal and new trial

The purpose of Rule 51 is to give the district court an opportunity to correct errors in the jury instructions and to lessen the burden on the appellate courts. *See* 9A Wright & Miller Federal Practice and Procedure § 2551 at 382 (2d ed.1995). This rule was not intended to require pointless formalities, but rather was designed to prevent unnecessary new trials caused by errors in jury instructions that the district court could have corrected if timely brought to its attention. *See Robinson v. Heilman*, 563 F.2d 1304, 1306 (9th Cir.1977).

In the present case, the district court's decision not to amend the verdict form

caused the jury to deliberate under the wrong legal standard and probably affected the outcome of the trial. Judicial efficiency would have been better served by a corrected verdict form (and possibly amended summations) than by this appeal, which is being decided one and a half years after the original trial, to say nothing of the new trial now required. Because the time at which the objection was made rendered the legal error curable by the district court without significant prejudice or inefficiency, we hold that it was plain error to deny the request of Reynolds's counsel for a verdict form that complied with the correct legal standard. *See United States v. Combs,* 33 F.3d 667, 669 (6th Cir.1994) (stating that the district court has a duty to "clear up uncertainties which the jury brings to its attention" and to fairly respond to the jury's inquiries without creating prejudice).

## B. The district court did not err in excluding the Ombudsman's report

In addition to the alleged error in the verdict form, Reynolds contends that the district court erred in excluding from evidence a report prepared by the Legislative Corrections Ombudsman's Office concerning the misconduct tickets issued by Green. For the guidance of the parties and the district court on remand, we will briefly discuss this issue.

### 1. Standard of review

We review factual components of the district court's evidentiary determinations under an "abuse of discretion" standard, and review its legal components *de novo. See Miller v. Field,* 35 F.3d 1088, 1090 (6th Cir.1994) (holding that police reports compiled in response to an inmate's complaint that he had been raped by another inmate were not admissible under Rule 803(8) of the Federal Rules of Evidence).

### 2. The district court did not err in ruling the report inadmissible

As this court noted in *Miller,* the public records exception to the hearsay rule is justified by "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." *Id.* Because records prepared by public officials are presumed to be trustworthy, the burden is on the party opposing admission to show that a report is "inadmissible because its sources of information or other circumstances indicated a lack of trustworthiness." *Baker v. Elcona Homes Corp.,* 588 F.2d 551, 558 (6th Cir.1978).

The Ombudsman's report in question consists in part of a self-serving statement by Neal, describing his experience and arguing his conclusions about Green's motivations. Because Neal's statement lacks the reliability attributable to the independent conclusions of a public official, the district court properly excluded it. The remainder of the report contains Field Investigator Christopher Olden's understanding of the course of events at issue, including many hearsay statements made by Mrs. Reynolds and by Officers Hicks and Tupper. Under *Miller,* such "hearsay within hearsay" is inadmissible unless both levels of hearsay fall within an exception to the hearsay rule. No such exceptions were applicable in the present case.

Furthermore, to the extent that the report contains admissible information, Neal's attorney was able to elicit this information, and Olden's conclusion, at trial. Because Olden was available to testify, as were Officers Hicks and Tupper, we hold that the district court did not abuse its discretion in determining that the report was insufficiently reliable to fall within Rule 803(8)'s exception to the hearsay rule.

## III. CONCLUSION

For all of the reasons stated above, we **REVERSE** the decision of the district

court and **REMAND** the case for a new trial.