**CHICAGO INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**CHIMNEE CRICKET, Incorporated;
John Cerrito, Jr.; and Irina Youdin,**
Defendants–Appellants.

Nos. 00–1314, 00–1315.

United States Court of Appeals,
Sixth Circuit.

Aug. 24, 2001.

Before BOGGS, DAUGHTREY, and
FARRIS,* Circuit Judges.

---

* The Honorable Jerome Farris, United States
Circuit Judge for the Ninth Circuit, sitting by
designation.

PER CURIAM.

Defendants Chimnee Cricket Incorporated ("Chimnee Cricket"); John Cerrito, Jr.; and Irina Youdin appeal the district court's decision granting summary judgment to plaintiff Chicago Insurance Company ("Chicago Insurance") in this diversity action under Michigan law seeking a declaratory judgment as to the rights and liabilities under a general liability insurance policy. For the following reasons, we affirm.

## I

Youdin's husband, Youri, a Russian immigrant, signed an Independent Dealer Contractor Agreement ("the Agreement") with Chimnee Cricket, a chimney sweep company, on August 12, 1997. The same day, Youri went to a home in Mt. Clemens, Michigan to inspect a chimney. Youri fell off the roof, hit the concrete driveway, and suffered head injuries that resulted in his death the next day.

The Agreement entered into between Youri and Chimnee Cricket included the following provisions:

> The relationship of [Youri Youdin] and Chimnee Cricket, Inc., is and shall continue to be that of an Independent Contractor, and no Liabilities or Benefits, such as Workmen's Compensation, Pension Rights, or Liabilities, Insurance Rights or Liabilities, arising out of or related to an employer/employee relationship, shall arise, or accrue to either party or either party's agent, subcontractor, [sic] shall be implied between the two parties, or between either party as the other party's agent, employee, or subcontractor, and the Independent Contractor hereby agrees to hold Chimnee Cricket, Inc. harmless for any such claims by it or its associates, and any costs or expenses related thereto.
>
> . . .

> Compensation for Services Rendered will be based on a fee for all completed and valid orders and/or jobs the Contractor brings into the Firm, and said fees to be paid to such Contractor.
>
> . . .

> Contractor will be solely responsible for all tax liabilities as a self-employed Independent Contractor.

> Contractor will be solely responsible for reporting of such to the appropriate taxing authorities.

> Contractor shall be deemed to be an Independent Contractor for all purposes and shall not be deemed to be an employee of Chimnee Cricket, Inc. for purposes of payroll taxes, Workmen's Compensation, Unemployment Compensation, Fringe Benefits or any other purposes.
>
> . . .

> At the end of the calendar year, the Firm will provide the Contractor with a statement reported by Form 1099 detailing the amount of non-employee compensation paid to the Contractor for the year.

> The firm is not responsible for injury caused by acts or omissions not amounting to negligence.

> The contractor agrees to 'Hold Harmless' Chimnee Cricket, Inc. for any and all legal proceedings brought against Contractor, Contractor's Subcontractor and/or Contractor's company.
>
> . . .

> I authorize Chimnee Cricket, Inc., to hold and/or keep any money due to me for any questionable behavior such as theft or side jobs (doing work under the table).

On April 8, 1998, Youdin filed a complaint in Michigan state court against Chimnee Cricket and Cerrito, the owner of Chimnee Cricket. Youdin alleged that in

1997, her husband died as a result of injuries he suffered after he fell from a residential roof while employed by Chimnee Cricket as a chimney sweeper. Youdin claimed that Chimnee Cricket failed to provide workers' compensation insurance for Youri and therefore was liable in tort for Youri's injuries and death. In addition, Youdin claimed that even if her husband was an independent contractor, as claimed by Chimnee Cricket, Chimnee Cricket was liable for negligence based on its failure to guard against avoidable danger in a common work area.

Chimnee Cricket's insurer, Chicago Insurance, filed a declaratory judgment action against the defendants on July 15, 1999. The complaint alleged that Chicago Insurance had issued a general liability insurance policy to Chimnee Cricket, but that the policy excluded coverage for a claim based on Youdin's injuries and death. Chicago Insurance relies on Section I(2)(e) of the policy, which states:

This insurance does not apply to:

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as the employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Chicago Insurance also points out that it did not issue any employer's liability or workers' compensation policies to Chimnee Cricket.

Chicago Insurance states that after Youdin filed her lawsuit, it became aware of evidence indicating that Youdin was an employee of Chimnee Cricket and not an independent contractor as Chimnee Cricket claimed. Chicago Insurance included this evidence as exhibits to its motion for summary judgment.

As "Exhibit D," Chicago Insurance filed the results of an investigation conducted by the Michigan Department of Consumer and Industry Services, Construction Safety Division (MIOSHA) to determine if Chimnee Cricket had violated any of the employer standards set by the Michigan Occupational Safety and Health Act. On November 24, 1997, MIOSHA issued a citation and notification of penalty against Chimnee Cricket for various safety violations as an employer relating to Youri's injuries and death.

As "Exhibit E," Chimnee Cricket filed a handwritten narrative report prepared by Patrick Sullivan of the Michigan Department of Labor, Bureau of Safety and Regulation. In the report, Sullivan indicated that individuals working for Chimnee Cricket had filed claims with the Michigan Department of Consumer Services, Wage and Labor Division, which determined that the individuals were employees even though they had signed Independent Contractor Agreements. These claims were filed under provisions of Michigan law by which employees who have left a position can claim payment of past wages earned and due. *See* M.C.L. § 408.475(1). Copies of two such determinations were filed as "Exhibit F." In the determinations, the Department of Labor concluded that, in one case, Chimnee Cricket "exercised significant direction and control over where, when, and how claimant's work was to be performed" and, in the other, that Chimnee Cricket "exercised pervasive and ultimate control over the work performed." Therefore, the Department concluded that the individuals were employees and not independent contractors. In addition, the

determinations stated that Chimnee Cricket determined the prices for all services and reserved its right to fine chimney sweepers for failing to show up at a job.

Chicago Insurance also points out "factual findings" that it states were included in Sullivan's narrative report. Sullivan included the following statements that were based on interviews he conducted as part of his investigation of Chimnee Cricket: (1) a "former employee ... said when he reported for work at Chimnee Cricket ... a chalk board would have a list of the day's jobs and who was to go and do them;" (2) the former employee "also said they were given a sequence in which to do the jobs;" (3) "Mr. Cerritto [sic], Jr. told me he does not provide equipment or materials or tools for employees. From interviews and wage & hour claims I learned he does provide chimney cap stones, brushes, cleaning solutions, etc.;" (4) "New hired employees were provided with instructions and training on how to do the work;" and (5) "If the customer calls Chimnee Cricket and OKs the work to be done the employee does the work and receives 40% of the estimated price payed [sic] to the [sic] with a Chimnee Cricket payroll check." Sullivan also pointed out the portion in the Agreement signed by Youri preventing an individual from performing any "side jobs."

The defendants note that when Chicago Insurance filed its motion for summary judgment on November 22, 1999, no discovery had been conducted and the only evidence before the district court were the exhibits provided by Chicago Insurance with its summary judgment motion. The district court, without holding a hearing, granted Chicago Insurance's motion for summary judgment on February 18, 2000. The defendants filed notices of appeal, which this court consolidated on April 4, 2000.

## II

The defendants contend that the district court erred in granting summary judgment to Chicago Insurance on three bases. The defendants argue that the district court erred by (1) relying on inadmissible hearsay evidence, (2) improperly ruling on the merits, (3) granting summary judgment without an opportunity for discovery or a hearing. We will address each of these arguments in turn.

## A

The defendants challenge the district court's reliance on the handwritten narrative report prepared by Patrick Sullivan of the Michigan Department of Labor, Bureau of Safety and Regulation, filed as Exhibit E of Chicago Insurance's summary judgment motion.

The defendants point out that "summary judgment rulings must be based on admissible evidence." *Turner v. Scott,* 119 F.3d 425, 430 (6th Cir.1997). In addition, hearsay evidence may not be considered on summary judgment. *See Jacklyn v. Schering–Plough Healthcare Prod. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999). The defendants assert that Sullivan's narrative report is inadmissable hearsay evidence. The defendants take issue with Chicago Insurance's characterization of the narrative as falling under the "business records" exception of Fed.R.Evid. 803(8)(C), which excludes from the hearsay rule:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The defendants contend that the narrative report did not consist of "factual findings," but of hearsay statements made to Sullivan and, therefore was hearsay within hearsay.

This court reviews the admission of factual findings from an official investigation under Fed.R.Evid. 803(8)(C) for abuse of discretion. *See Amerisure Ins. Co. v. Ex-Cell-O Corp.*, 1998 WL 30817, No. 96–2082, at *3 (6th Cir. Jan 22, 1998) (citing *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 732 (6th Cir.1994)).

■ The district court abused its discretion in admitting Sullivan's report and relying upon it in granting summary judgment to Chicago Insurance. "Although conclusions and opinions may also be contained in the document ... to be admissible under Rule 803(8)(C), a report must first be a set of factual findings." *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir.1994). In *Miller*, the court noted that factual findings based on inadmissible hearsay are not admissible under Rule 803(8)(C) because the underlying information is untrustworthy. *Ibid.* The court made the following important distinction:

> While a court may presume that a *preparer of a report*, under a duty to relate information, will perform the task required and formulate justified conclusions and reasonable opinions based on evidence *actually observed by the preparer*, no such presumption arises when the preparer relies on potentially untrustworthy hearsay evidence from another individual under no duty to provide unbiased information.

*Id.* at 1091–92. The court ruled that certain police reports were inadmissible because they were not being relied upon for their results or particular factual findings, but as a means of admitting inadmissible hearsay evidence.

In this case, Sullivan's factual findings are based primarily on interviews that he conducted during his investigation. His report consists of a series of statements that he admits were told to him by other people, not findings that he independently developed through his own research. Since these interviews may be characterized as untrustworthy hearsay evidence, Sullivan's findings are unreliable and therefore his narrative report is inadmissable. As we shall discuss, however, there was sufficient evidence in the remaining admissible exhibits filed by Chicago Insurance to support the district court's grant of summary judgment in favor of Chicago Insurance.

### B

The defendants argue that the district court erred in concluding that Youri Youdin was an employee of Chimnee Cricket and that, therefore, Chimnee Cricket's claim relating to Youri's injuries and death was excluded from coverage under Chimnee Cricket's policy with Chicago Insurance.

The defendants' argument is two-fold. First, they argue that the factual evidence relied upon art oby the district court was unsupported by the record. Second, they contend that the district court misapplied the correct legal standard for determining whether Youri was an employee.

### 1

First, as to the evidence, the defendants point out that the district court relied upon ten "undisputed" facts in concluding that Youri Youdin was an employee of Chimnee Cricket. The defendants argue that these facts are unsupported by the record or are supported only by the inadmissible hearsay evidence of Sullivan's narrative report.

Although not all the facts relied upon by the district court are supported by the record, there are a sufficient number of undisputed facts that are supported by the

record that sustain the district court's conclusion that Youri Youdin was an employee of Chimnee Cricket. The district court relied upon ten facts in making its determination. We will analyze each of these facts to determine the extent to which they are supported by the record.

### The District Court's Ten Facts

(1) *No formal contract existed between Youri and Chimnee Cricket guaranteeing employment for a specific duration.* The defendants claim this is not in the record, but the Agreement signed by Youri Youdin with Chimnee Cricket was open-ended and not for a definite term.

(2) *Chimnee Cricket's sole business was chimney maintenance and repair, and its workers each performed all of the services offered.* The only direct statement as to this fact is in Sullivan's inadmissible narrative report that "Mr. Cerrito told me he ... advertis[es] Chimnee Cricket as a chimney sweep and repair business." There is evidence supporting the fact that Chimnee Cricket is in the chimney maintenance and repair business, however. In the properly admitted citation and notification of penalty from the Michigan Department of Consumer and Industry Services is the statement, "[Chimnee Cricket's] primary business is chimney cleaning and repair." In addition, the citation stated that "[e]mployees engaged in fireplace and chimney repair and cleaning. . . ."

(3) *Youri's position was full-time and constituted his sole source of income.* Chicago Insurance asserted this fact in its summary judgment motion, but there is no evidence supporting it in the record. Chicago Insurance only argues on appeal that it is undisputed by the defendants.

(4) *Chimnee Cricket trained its workers and provided some materials and equipment.* This is included in Sullivan's inadmissible narrative report, in which he states, "[f]rom interviews and wage & hour claims I learned [Cerrito] does provide chimney cap stones, brushes, cleaning solutions, etc." and "new hired employees were provided with instructions and training and how to do the work." There is also evidence in the properly admitted wage and hour claims that Chimnee Cricket "provided tools and materials."

(5) *Youri did not perform any related services outside his employment with Chimnee Cricket, and was in fact prohibited from doing so by Chimnee Cricket.* The Agreement states that Youri authorized "Chimnee Cricket, Inc. to hold and/or keep any money due to me for any questionable behavior such as theft or side jobs (doing work under the table)," which indicates that Youri was forbidden to perform any other work or risk the money going to Chimnee Cricket.

(6) *Youri signed an "Independent Dealer Contractor Agreement" prepared by Chimnee Cricket stating that his work status was that of independent contractor.* The fact is undisputed although the defendants argues that the fact that Youri signed an *Independent Contractor* Agreement opposes a finding that Youri was an employee.

(7) *Chimnee Cricket marketed, obtained, and serviced all its jobs under the name "Chimnee Cricket," and determined the price of any services performed and the method to be used.* This is supported by Sullivan's inadmissible narrative report, but is also supported by one of the properly admitted wage and hour claim determinations.

(8) *Youri was required to report to work in the morning where a chalkboard indicated what job he should attend.* There is no evidence stating that such a requirement applied to Youri. The only evidence of a general requirement of this nature is the statements in Sullivan's inadmissible narrative report that "employees with no

previous experience were hired and told what time to report" and a "[f]ormer employee ... said when he reported for work ... a chalk board would have a list of the day's jobs and who was to go and do them."

(9) *Chimnee Cricket hired Youri and had the authority to fire him.* The defendants argue that this is not supported by the record, but it there is support for this fact as a result of Youri having signed the Agreement.

(10) *Youri was compensated for work performed via payroll checks, but Chimnee Cricket did not withhold any taxes, and Youri was responsible for paying his own tax liabilities and for reporting his income to the appropriate taxing authorities.* The Agreement states that Youri would be responsible for paying all tax liabilities, that he would be responsible for reporting all tax liabilities, that he was not deemed to be an employee for purposes of payroll taxes, and that he would receive a 1099 Form from Chimnee Cricket detailing his compensation. In addition, Sullivan's inadmissible narrative report states that "the employee does the work and receives 40% of the estimated price payed [sic] to the [sic] with a Chimnee Cricket payroll check."

■ Even excluding the facts derived from Sullivan's narrative report, the remaining admissible evidence indicates that: (1) Youri had an open-ended contract without a definite term; (2) Chimnee Cricket was in the chimney maintenance business and its workers provided the same services

Chimnee Cricket offered; (3) Youri was prevented from having side jobs by the Agreement and any money Youri earned from side jobs had to be given to Chimnee Cricket "to hold and/or keep"; (4) Chimnee Cricket provided its workers with equipment; and (5) Chimnee Cricket and Youri entered into the Agreement, indicating that Chimnee Cricket had the ability to end the Agreement and effectively fire Youri. These undisputed facts were sufficient for the district court to make a determination of whether Youri was an employee or independent contractor. Although perhaps more evidence, particularly direct evidence shedding light on Youri's relationship with Chimnee Cricket, might have been helpful, there was sufficient evidence upon which the district court could base its decision.

### 2

The defendants argue that the district court also erred in its legal conclusion that Youri was an employee of Chimnee Cricket at the time of his injuries and death.

■ The defendants assert that the district court erred in its application of the "economic reality test" to determine whether Youri was an "employee" of Chimnee Cricket.[1] The economic reality test has been developed by Michigan courts to determine whether an individual is an independent contract or an employee eligible for worker's compensation benefits. *See Hoffman v. JDM Assocs.*, 213 Mich.App. 466, 540 N.W.2d 689, 690 (1995). Michigan courts have approved of the use

---

1. The defendants also argue that the MIOSHA investigation and the wage and hour determinations are not relevant in the context of construction of an insurance policy. The defendants argue that the definitions of employee under the Michigan occupational and safety and health act and wage and fringe benefit statutes are very broad. Neither the district court nor Chicago Insurance has asserted that

the MIOSHA investigation and the wage and hour determinations are dispositive as to the issue of whether Youri was an employee of Chimnee Cricket, however. Rather, both the district court and Chicago Insurance have properly relied upon the MIOSHA investigation and the wage and hour determinations for factual findings that relate to components of the "economic reality test."

of the economic reality test in cases in which the term "employee" is not defined in an insurance contract.[2] *See Meridian Mut. Ins. Co. v. Wypij*, 226 Mich.App. 276, 573 N.W.2d 320, 323 (1998). "The economic reality test involves four basic factors: (1) control of the worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) performance of the duties toward the accomplishment of a common goal." *Id.* at 322.

In addition, Michigan courts have considered seven additional factors when applying the economic reality test: (1) What liability, if any does the employer incur in the event of the termination of the relationship at will?; (2) Is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?; (3) Is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expenses?; (4) Does the employee furnish his own equipment and materials?; (5) Does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?; (6) Is the work or the undertaking in question customarily performed by an individual as an independent contractor?; (7) Control, although not an exclusive criterion, is a factor to be considered along with payment of wages, maintenance of discipline, and the right to engage or discharge employees.[3] See *Hoste v. Shanty Creek Mgt.*, 221 Mich.App. 144, 561 N.W.2d 106, 109–10 (1997), *rev'd on other grounds*, 459 Mich. 561, 592 N.W.2d 360 (1999); *McKissic v. Bodine*, 42 Mich.App. 203, 201 N.W.2d 333, 335–36 (1972).

Once again, the facts presented by Chicago Insurance—excluding those presented in Sullivan's inadmissible narrative report—are the following: (1) Youri had an open-ended contract without a definite term; (2) Chimnee Cricket was in the chimney maintenance business and its workers provided the same services Chimnee Cricket offered; (3) Youri was prevented from having side jobs by the Agreement and any money Youri earned from side jobs had to be given to Chimnee Cricket "to hold and/or keep"; (4) Chimnee Cricket provided its workers with equipment; and (5) Chimnee Cricket and Youri entered into the Agreement, indicating that Chimnee Cricket had the ability to end the Agreement and effectively fire Youri. In addition, the two wage and claim determinations presented by Chicago Insurance indicate that, with regard to other individuals who signed similar Independent Contractor Agreements, Chimnee Cricket exercised control over the work they performed. These uncontested facts go far in supporting the conclusion that, according to the economic reality test, Youri was an employee of Chimnee Cricket and not an independent contractor.

In response, the defendants rely principally on the Agreement. The defendants cite to *Luster v. Five Star Carpet Installations, Inc.*, 239 Mich.App. 719, 609 N.W.2d 859 (2000), which was released just over a week after the district court's decision in this case. In *Luster*, a plaintiff sought workers' compensation benefits, but a magistrate, applying the economic reality test, found that he was an independent contractor and was ineligible for them. The Michigan Court of Appeals affirmed.[4]

**2.** Neither Chicago Insurance nor the defendants object to its use in this case.

**3.** An eighth factor, that weight should be given to those factors that will most favorably effectuate the objectives of the statute, applies only when the economic reality test is used in the context of a workers' compensation claim.

**4.** Chicago Insurance argues that *Luster* is not applicable to this case because: (1) the economic reality test was being applied in a workers' compensation case, not an insurance case and (2) the economic reality test was replaced by amendments to Michigan workers' compensation statute after the magis-

The magistrate noted the following facts in finding that the worker was an independent contractor: (1) the worker and the company entered into a written contract stating that the worker was an independent contractor; (2) the worker was paid by the yard installed and received no fringe benefits; (3) the company did not withhold taxes from the worker's payments and issued a 1099 form to the worker at the end of the year; (4) the worker rented a truck and tools from the company; (5) the worker was free to do other work, but could not use the company's truck or tools to do so; (6) the company assigned work to workers, such as the plaintiff, in the morning and gave them minimal directions; (7) the company provided workers, such as the plaintiff, with carpet, padding, and edge strips, but the workers furnished their own supplies and materials. *Id.* at 861–64. The only facts from *Luster* that are similar to this case are that Youri and Chimnee Cricket entered into a written contract stating that Youri was an independent contractor and the Agreement indicated that Youri was responsible for his own taxes and that Chimnee Cricket would issue a 1099 form to Youri at the end of the year. The additional facts in *Luster* are dissimilar from Youri's case, since in this case evidence indicates that Chimnee Cricket limited the work that Youri did and provided directions to workers that signed similar agreements, furnished them with supplies and materials, and exercised control over their work. In addition, we find particularly compelling the fact that the Agreement forbade Youri from performing side jobs, with any money that Youri earned from side jobs accruing to Chimnee Cricket "to hold and/or keep."

In the end, the defendants' argument is based solely on the Agreement, which does indeed state that Youri was an independent contractor. Chicago Insurance, however, relies on both the Agreement (particularly its open-ended nature, the ability of Chicago Insurance to break the Agreement at any time and effectively fire Youri, and the prohibition against side jobs) as well as additional evidence regarding Chimnee Cricket giving equipment and supplies to and controlling the work of other workers who had signed similar Independent Dealer Contractor Agreements. The defendants do not rebut this additional evidence, failing to provide any evidence beyond the Agreement itself regarding whether Youri was an employee or independent contractor of Chimnee Cricket. Therefore, based on the undisputed evidence presented by Chicago Insurance, the district court did not err in granting summary judgment in favor of Chicago Insurance on the basis that Youri was an employee of Chimnee Cricket and that, therefore, exclusion (e.) of Chimnee Cricket's policy with Chicago Insurance applies in this case.

C

The defendants claim that the district court did not allow adequate time for discovery. The defendants argue that they

trate's decision and before the Michigan Court of Appeals's decision.

These arguments are not sufficient to demonstrate that this court should not look to *Luster* for guidance. First, Chicago Insurance provides no legal basis why a court cannot look to the application of the economic reality test outside of the insurance context. Second, although the Michigan workers' compensation statute has been amended, the Michigan rule that the economic reality test can be used as an aid in the insurance context is still good law. Third, the Michigan Court of Appeals affirmed the magistrate's determination, indicating that although the magistrate did not apply the amended statute, the magistrate's analysis and findings were consistent with the amended statute. 609 N.W.2d at 863.

failed to conduct adequate discovery because they relied upon a statement at an October 27 status conference that "[a]nother conference [is] needed ... to discuss settlement of this and underlying state court claim." The defendants contend that they did not undertake discovery because "the court's action suggested it would be irrelevant." As a result, they state they were not prepared when Chicago Insurance filed its motion for summary judgment on November 22, 1999, the day before the second status conference.

In addition, the defendants argue that the district court violated Local Rule 7.1(e)(2) of the United States District Court for the Eastern District of Michigan, which provides that "[o]ral hearings on all ... motions will be held unless the judge at any time prior to the hearing orders their submission and determination without oral hearing."

Neither of these arguments is persuasive. First, just as Chicago Insurance conducted discovery before filing its November 22, 1999 motion for summary judgment, there is no reason why the defendants could not have conducted discovery at the same time. It is not enough for the defendants to claim that they did not conduct discovery because the district court suggested that the parties enter into settlement negotiations. Moreover, neither Chimnee Cricket nor Youdin objected to the court's briefing schedule or requested additional time to conduct discovery. According to FED. R. CIV. P. 56(f), the defendants could have presented affidavits asserting that they could not "present by affidavit facts essential to justify" their opposition to Chicago Insurance's summary judgment motion. In such a case, "the court may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just."

FED. R. CIV. P. 56(f). There is no evidence that the defendants took any actions pursuant to this rule to prevent summary judgment from being entered in favor of Chicago Insurance.

As for oral argument, Local Rule 7.1(e) indicates that the district court has the discretion to order submission of briefs and to make a determination without hearing oral argument. The defendants are unable to demonstrate that the district court abused its discretion by not conducting an oral hearing.

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.